JOHN R. BINNS, Respondent, *v.* THE VITAGRAPH COMPANY OF AMERICA, Appellant.

Right of privacy — action for injunction and for damages for unauthorized use of a person's name and picture for trade and advertising purposes — extent of recovery.

1. Where a manufacturer of films for moving pictures used the name and picture of plaintiff, without his consent, in a series of moving pictures prepared for public exhibition and purporting to represent an occurrence in which plaintiff had taken part, and widely advertised such pictures, with the name of the plaintiff, by means of which they were leased to moving picture shows for exhibition, such use of plaintiff's name and picture was commercial and for the purpose of trade and advertising, and is prohibited by sections 50 and 51 of the Civil Rights Law (Cons. Laws, ch. 6). Plaintiff is entitled, therefore, to an injunction restraining defendant from so using his name and picture, and also to damages for such use thereof.

2. The fact that the picture used by defendant was not a photograph or a true representation of plaintiff is immaterial, since a picture, within the meaning of the statute, is not necessarily a photograph of the living person, but includes any representation of such person. The picture represented by the defendant to be a true picture of the plaintiff and exhibited to the public as such, was intended to be, and it was, a representation of plaintiff, and was used by the defendant as a matter of business and profit, and contrary to the prohibition of the statute.

3. Although the unauthorized use of a person's name and picture for trade and advertising purposes may be a libel as well as a violation of the rights protected by this statute (Civil Rights Law, §§ 50, 51; Cons. Laws, ch. 6), a plaintiff bringing an action under the statute for damages, arising from the prohibited use of his name and picture, is limited to one recovery only, and that must be in such action.

*Binns* v. *Vitagraph Co.*, 147 App. Div. 783, affirmed.

(Argued December 4, 1913; decided December 30, 1913.)

APPEAL from a final judgment entered December 18, 1911, upon an order of the Appellate Division of the Supreme Court in the first judicial department, which reversed an order of the court at a Trial Term setting

aside a verdict in favor of plaintiff on an assessment of damages and reinstated said verdict, bringing up for review an interlocutory judgment of Special Term granting an injunction herein and directing that plaintiff's damages be assessed by a jury and an order of said Appellate Division affirming said interlocutory judgment.

The defendant is a corporation engaged in the business of manufacturing, leasing, licensing, selling, distributing, displaying and circulating photographic films for use in motion picture machines. On January 23, 1909, the steamships *Republic* and *Florida* came into collision at sea. The *Republic* was equipped with machines for sending and receiving messages by wireless telegraphy and the plaintiff, a British subject, was the operator of said machine. Immediately following the collision he sent a danger signal consisting of the letters " C. Q. D," which were received by a wireless operator on the steamship *Baltic* and by such an operator at Siasconset, on Nantucket island. Messages were thereafter exchanged between the plaintiff on the *Republic* and the operator on the *Baltic* and at Siasconset. The messages sent by the plaintiff resulted in the *Baltic* going to the rescue of the passengers on the other steamships and the passengers and crew of the *Republic* were removed to the *Baltic* and transported to New York. The plaintiff was the first man to use wireless telegraphy at a time when its use resulted in saving hundreds of lives.

Soon after the day of the collision the defendant proceeded to make a series of pictures entitled " C. Q. D. or Saved by Wireless; A True Story of the Wreck of the *Republic*." These pictures, with the exception perhaps of one or more taken of the *Baltic* as it entered the harbor of New York, were manufactured or made up in the studio of the defendant, by the use of scenery prepared for the purpose and of actors employed to impersonate the plaintiff and others. A series of picture films were thus prepared from which moving pictures could be produced for

public exhibition.   Such pictures were exhibited in many places in this state by authority of the defendant.   The series of pictures commenced with a sub-series entitled "John R. Binns the Wireless Operator in his Cabin aboard the S. S. *Republic.*"   This sub-series was followed by others, the last one of the series being entitled "Jack Binns and his Good American Smile."   The picture of Binns appeared in the series five times and his name was used in the sub-titles six or more times.   This action is brought to enjoin the use of the plaintiff's picture and name and to recover damages for the injuries received by him by reason of such use.   It is not claimed that the plaintiff ever consented in writing or othewise to the use of his picture and name.   Further facts appear in the opinion.

*Edgar T. Brackett, James J. Allen* and *Samuel O. Edmonds* for appellant.   The defendant has not used the plaintiff's name, portrait or picture for the purposes of trade or advertising within the meaning of the statute. (*Roberson* v. *R. F. B. Co.,* 171 N. Y. 538; *Rhodes* v. *Sperry,* 193 N. Y. 223; *U. S.* v. *Brewer,* 139 U. S. 278; *Blaschko* v. *Wurster,* 156 N. Y. 437; *Ellis* v. *Hurst,* 70 Misc. Rep. 122; *Moser* v. *Press Pub. Co.,* 59 Misc. Rep. 70; *Jeffries* v. *Eve. Journal,* N. Y. L. J. April 26, 1910.) The illustrated moving picture story, "C. Q. D., or Saved by Wireless; A True Story of the Wreck of the *Republic,*" is a literary, artistic and dramatic composition, and the defendant's right to its unrestricted use and publication is within the constitutional guaranty of liberty of speech and of the press. (*American Mutoscope Co.* v. *Edison,* 137 Fed. Rep. 263; *Edison* v. *Lubin,* 122 Fed. Rep. 240; *Harper* v. *Kalem,* 160 Fed. Rep. 61; *Stuart* v. *Palmer,* 74 N. Y. 183; *Brandreth* v. *Lance,* 8 Paige, 23; *M. F. Arms Co.* v. *Shields,* 71 N. Y. 384.)

*Arthur F. Hansl* for respondent.   The court below has found that the appellant has been using the name and

pictures of the respondent for the purposes of trade and advertising without his consent, and has rendered judgment accordingly, and that judgment has been affirmed by the Appellate Division. The evidence throughout supports the findings, and the judgment should now be affirmed. (*Riddle* v. *MacFadden*, 116 App. Div. 353; *Rhodes* v. *Sperry & Hutchinson*, 193 N. Y. 223; *Eliot* v. *Jones*, 66 Misc. Rep. 95; 140 App. Div. 911; *Herbert* v. *Universal Talking Machine Co.*, N. Y. L. J. March 9, 1904; *Wyatt* v. *McCreery*, 126 App. Div. 650; *Wyatt* v. *Wanamaker*, 126 App. Div. 656; *Kunz* v. *Bosselman*, 115 N. Y. Supp. 650; 131 App. Div. 288; *Parsons* v. *Teller*, 188 N. Y. 318; *Eames Vacuum Co.* v. *Prosser*, 157 N. Y. 289; *Forsyth* v. *City of Oswego*, 191 N. Y. 441.) The statute under which this action is brought applies to individuals carrying on the business in which the defendant is engaged, and also to the pictures in question. (*Kunz* v. *Bosselman*, 115 N. Y. Supp. 650; *Crowell* v. *Parker*, 46 Atl. Rep. 35.)

CHASE, J. The Special Term found that the defendant used the plaintiff's name and picture for the purposes of trade and advertising. It is asserted that the defendant by the way it used the plaintiff's name and picture held him up to public ridicule and contempt. In determining whether this action can be maintained it is immaterial whether the defendant's use of the plaintiff's name and picture held him up to public ridicule and contempt because the action is not brought for a libel. If the use made of the plaintiff's name and picture constituted a libel it would be punishable as provided by the Penal Law (sections 1340–1352) and damages could be recovered therefor at common law. This action is brought pursuant to the Civil Rights Law, Cons. Laws, ch. 6 (sections 50 and 51), and it cannot be maintained unless it is authorized by its provisions.

Section 50 of said law provides: "A person, firm or cor-

poration that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor."

Section 51 of said law provides that any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade, without the written consent of such person first obtained, may maintain an equitable action to prevent and restrain the use thereof and to recover damages by reason of such unlawful use.

Prior to the passage of chapter 132 of the Laws of 1903, the exact provisions of which are now contained in said sections of the Civil Rights Law, it was definitely determined in this state that the right of privacy as a legal doctrine enforceable in equity did not exist to prevent the use of a portrait for advertising purposes. (*Roberson* v. *Rochester Folding Box Company*, 171 N. Y. 538.) The statute now recognizes and enforces the right of a person to control the use of his name or portrait by others so far as advertising or trade purposes are concerned. This right of control in the person whose name or picture is sought to be used for such purposes is not limited by statute. (*Rhodes* v. *Sperry & Hutchinson Company*, 193 N. Y. 223.) Was the plaintiff's name and picture used by the defendant for advertising purposes, or for the purposes of trade?

The statute is very general in its terms, but when a living person's name, portrait or picture is used, it is not necessarily and at all times so used either for advertising purposes, or for the purposes of trade. The statute is in part at least penal, and should be construed accordingly. So construed, and also construed in connection with the history of chapter 132, Laws of 1903, which was enacted at the first session of the legislature after the decision in the *Roberson* case, it does not prohibit every use of the

name, portrait or picture of a living person. It would not be within the evil sought to be remedied by that act to construe it so as to prohibit the use of the name, portrait or picture of a living person in truthfully recounting or portraying an actual current event as is commonly done in a single issue of a regular newspaper. It is not necessary now to attempt to define what is, or is not within its prohibitive provisions. In the case before us the series of pictures were not true pictures of a current event but mainly a product of the imagination, based, however, largely upon such information relating to an actual occurrence as could readily be obtained. The method used in designing and preparing the pictures is described by one of the officers of the defendant as follows: "Our method of reproducing current events which I have described as news matters, is by getting all the data, all the matter in hand, from every reliable source and weave it into what we call a picture story. That story is produced by first being written just as a playright writes a play or an author writes a story."

The same witness, referring to the series of pictures relating to the wreck of the *Republic,* testified: "It was under my own supervision. I was in collaboration with one of our stage directors, the author of the text that accompanied the picture. We purchased all the newspapers we could find, everything that had any bearing on the story, and we sat down and wrote out what we called a scenario. * * * We produced in our studio the interiors of the captain's cabin; the wireless operator's room on the *Republic;* the wireless operator's room on the *Baltic* and the operator's room at Siasconset. * * * We assigned various actors and actresses in our employ to take the various parts. * * * The part of Mr. Binns was assigned to one of our actors. * * * We have to use our imagination largely in those cases."

After the negative films for the pictures under consideration so made were completed, a large number of pic-

ture films were manufactured. The defendant filed one set, which he defined as a " photograph," with the librarian of Congress, and a copyright was issued to it for the title to the picture story. The picture films ready for use in moving picture shows, and of course including the plaintiff's name and picture, were with others described at length in circulars and pamphlets, and such circulars and pamphlets were sent throughout this and other states to those engaged in the business of exhibiting pictures to the public.

About February 20, following the collision, the picture films were placed upon the market and were thereafter used in moving picture shows pursuant to leases from and other agreements with the defendant. The plaintiff's name was prominent in the advertisements put out by the defendant describing its manufactured product, and the purpose of the advertisements was to extend the defendant's business and add to its profits by increasing the demand for such pictures, and thus multiplying the number of leases or other agreements by which the pictures and films were put upon the market. The use of the name and picture of the plaintiff by the defendant in the picture films, and pursuant to leases and agreements with the defendant in the moving picture shows was commercial. Such use was in the language of the opinion in the *Roberson* case: "For his (its) own selfish purposes."

A picture within the meaning of the statute is not necessarily a photograph of the living person, but includes any representation of such person. The picture represented by the defendant to be a true picture of the plaintiff and exhibited to the public as such, was intended to be, and it was, a representation of the plaintiff. The defendant is in no position to say that the picture does not represent the plaintiff or that it was an actual picture of a person made up to look like and impersonate the plaintiff.

It is not necessary in this opinion to discuss the question whether a person, firm or corporation would be liable under the statute for making and using a picture

of a living person when it is included in a picture of an actual event in which such person was an actor, and such picture is a mere incident to the actual event portrayed. The use of the plaintiff's name and picture as shown by the testimony in this case was not a mere incident to a general picture representative of the author's understanding of what occurred at the wreck of the *Republic*. The first picture of the series was essentially a picture of the plaintiff, although included therewith was a place having relation to the other parts of the pictures exhibited — but the last picture of the series had no connection whatever with any other place or person or with any event. His alleged personal movements as exhibited in the now well-known form of moving pictures had no relation to the other pictures, and it was not designed to instruct or educate those who saw it. The defendant used the plaintiff's alleged picture to amuse those who paid to be entertained. If the use of the plaintiff's name and picture as shown in this case is not within the terms of the statute, then the picture of any individual can be similarly made and exhibited for the purpose of showing his peculiarities as of dress and walk, and his personal fads, eccentricities, amusements and even his private life. By such pictures an audience would be amused and the maker of the films and the exhibitors would be enriched. The greater the exaggeration in such a series of pictures, so long as they were not libelous, the greater would be the profit of the picture-maker and exhibitor.

We hold that the name and picture of the plaintiff were used by the defendant as a matter of business and profit and contrary to the prohibition of the statute. It is urged that there is danger of serious trouble in the practical enforcement of any rule which may be adopted in construing and enforcing the statute so far as it relates to purposes of trade. If there is any basis for the suggestion of danger in enforcing a part of the statute under con-

sideration it is the duty of the legislature to repeal such part thereof, or so modify it as to define with greater particularity what it intends should be prohibited, or perhaps permit the use of a person's name, portrait or picture for purposes of trade, if the oral assent of such person, or, if a minor, of his or her parent or guardian, is obtained therefor.

This court cannot consider the question whether the amount of damages given by the jury in its verdict is excessive. We agree with the opinion of the Appellate Division in which it is said: " We are of opinion that the plaintiff can have only one recovery in the premises and that it must be in this action. The terms of the statute are very broad and they include all of the damages sustained by the plaintiff. It would be difficult to avoid a double recovery if the jury were to be permitted in one action to give damages under the statute for a violation of rights protected thereby, and in another action for the libel based on the same acts."

The judgment should be affirmed, with costs.

CULLEN, Ch. J., HISCOCK, COLLIN, CUDDEBACK and HOGAN, JJ., concur; MILLER, J., not sitting.

Judgment affirmed.