GRACE HUMISTON, Plaintiff, *v.* UNIVERSAL FILM MFG.
Co., Defendant.

(Supreme Court, New York Special Term, August, 1917.)

Injunctions — who entitled to — restraining use of moving picture films
— Civil Rights Law, §§ 50, 51.

The use by defendant of plaintiff's name and picture with-
out her consent for display in a moving picture film purport-
ing to represent an occurrence in which she had taken a
part and by which defendant is seeking to make money out
of plaintiff's reputation and prominence is contrary to the
provisions of sections 50 and 51 of the Civil Rights Law and
she is entitled to an injunction *pendente lite* restraining such
use of her name and picture.

MOTION for injunction *pendente lite.*

Supreme Court, August, 1917.          [Vol. 101.

Edward K. Sumerwell (Louis S. Posner, of counsel), for plaintiff.

Stanchfield & Levy and Siegfried F. Hartman, for defendants.

. ORDWAY, J. Motion for injunction *pendente lite* to restrain defendants from using and displaying the plaintiff's name, photograph and portrait in their moving picture films, contrary to the provisions of sections 50 and 51 of the Civil Rights Law. The defendants have organized and are conducting a business called the " Universal Animated Weekly," in which they produce and distribute for use by their customers reels of films of motion pictures, which are photographs of actual current events which they deem of public interest. These reels are produced and distributed weekly and are exhibited all over the country in moving picture theatres as soon as possible after the occurrence of the events depicted. The defendants furnish with them to their customers posters which are used as bulletins for displaying outside of the place of exhibition to inform the public what will be shown within. The defendants admit that " this service is marketed and sold " by them, and is " a source of substantial profit " to the defendants.

In their reel of films used as above described and called " Universal Animated Weekly No. 77," the defendants have included photographs of pictures of the plaintiff, accompanied with the following " legends:"

" Woman lawyer solves Ruth Cruger mystery. After world-wide search, Mrs. Grace Humiston's persistent efforts lead to discovery of high school girl's murder — New York City. Sub. The woman who succeeded where police failed — Mrs. Grace Humiston. In Cocchi's cellar — passed by millions — the crime

was hidden for months. Thousands attracted to scene of crime.''

They have also furnished posters or publicity matter accompanying said number of the '' Weekly '' films, to be used by their customers as above described, containing in large display type the same words as appear in the main legend above quoted. These reels of films and posters are being used by at least fifty customers of the defendants in moving picture theatres in New York city and other parts of the country.

The plaintiff has not given her written consent to this use of her name and picture, and now brings suit for an injunction against such use and for damages. In my opinion this case cannot be distinguished in principle from the case of *Binns* v. *Vitagraph Co.*, 210 N. Y. 51. The defendants attempted to distinguish it on the ground that in the *Binns* case the films were not photographs of an actual event and of actual people, but were photographs of actors posed for the purpose and of scenery simulating the actual scenes of the wreck of the *Republic,* that is, were really a photoplay, whereas in this case the films are photographs of actual people and events precisely as they acted and happened, and further argue that there is a legal distinction between photoplay as commonly known and used and their service, which they contend is a regular weekly news service for the dissemination of information to the public, and analogous to a regular newspaper or at least to a weekly newspaper or magazine.

In my opinion there is no foundation for any legal distinction between the two cases. The '' information '' which is being '' disseminated '' by defendants' films is of the same character as that '' disseminated '' by the Binns films. The fact that the defendants' films are photographs of actual current events and are

called " Universal Animated Weekly " and are pro-. duced and distributed weekly and used as soon as possible after the occurrence of the events does not make them a newspaper, or bring them within the protection extended to newspapers by the cases of *Colyer* v. *Fox Publishing Co.,* 162 App. Div. 297, and *Jeffries* v. *New York Evening Journal Publishing Co.,* 67 Misc. Rep. 570, on which defendants rely.  I do not understand that in those cases the courts founded their decisions upon the constitutional protection of the freedom of the press, and defendants expressly disclaim that they are relying upon such constitutional provisions.  As I understand those cases the courts merely held that the legislature did not intend by chapter 132 of the Laws of 1903, now sections 50 and 51 of the Civil Rights Law, to extend the prohibitions of that statute to newspapers.  But that is very far from holding that such a service as the defendants conduct is a newspaper or that the acts complained of are not prohibited by the statute.  The Supreme Court of the United States has recently had occasion to consider the character of such service in the case of *Mutual Film Corporation* v. *Industrial Commission of Ohio,* 236 U. S. 230, where the question was involved of the constitutionality of a censorship of a service which included (p. 232) " events of historical and current interest — the same events which are described in words and by photographs in newspapers, weekly periodicals, magazines and other publications, of which photographs are promptly secured a few days after the events which they depict happen; thus regularly furnishing and publishing news through the medium of motion pictures under the name of ' Mutual Weekly,' " and said (p. 244) : " It cannot be put out of view that the exhibition of moving pictures is a business pure and simple, originated and conducted for

profit, like other spectacles, not to be regarded, nor intended to be regarded by the Ohio constitution, we think, as part of the press of the country or as organs of public opinion.''

The defendants argue that they are not using the plaintiff's name and picture '' for advertising purposes or for the purposes of trade.'' I cannot agree with them. The films are used in the defendants' regular business, for purposes of profit, and the posters are used to advertise the films and to induce the public to patronize the theatres where the films are exhibited. In other words, the defendants are exploiting the plaintiff's name and picture in their business for profit, and even if they are incidentally disseminating information as to current news of the day, the plaintiff has the right to object and to an injunction against the continuance of such conduct. In *Binns* v. *Vitagraph Co., supra,* the court said (p. 58): '' We hold that the name and picture of the plaintiff were used by the defendant as a matter of business and profit and contrary to the prohibition of the statute. It is urged that there is danger of serious trouble in the practical enforcement of any rule which may be adopted in construing and enforcing the statute, so far as it relates to purposes of trade. If there is any basis for the suggestion of danger in enforcing a part of the statute under consideration it is the duty of the legislature to repeal such part thereof.''

As the court said in *Almind* v. *Sea Beach Railway Co.,* 157 App. Div. 230, 232: '' The right of privacy under the statute cannot be invaded for purposes purely informative or redemptive, whether the altruist be entirely a charitable envoy or a railway company. No cause is so exalted that it may allure by exposing the portrait of a person to the public gaze.''

The defendants argue that if this motion is granted

it will seriously interfere with, if not destroy, their business, which gives information as to current events and innocent amusement to thousands, and they set out at length the services they are rendering to the government and to the Red Cross in connection with the present war and the activities of good citizens in connection therewith. Even if this were true, the remedy is by an appeal to the legislature, but the results they pretend to fear are not likely to follow. While I am not called on to decide the point, it is not probable that any court will enjoin the use of moving picture films of current events of real public importance, because they happen as a mere incident to include among many the picture of an individual. As the court said in the *Binns* case (p. 57) : " It is not necessary in this opinion to discuss the question whether a person, firm or corporation would be liable under the statute for making and using a picture of a living person when it is included in a picture of an actual event in which such person was an actor, and such picture is a mere incident to the actual event portrayed. The use of the plaintiff's name and picture as shown by the testimony in this case was not a mere incident to a general picture representative of the author's understanding of what occurred at the wreck of the Republic."

There is a clear distinction between a merely incidental and fortuitous use of an individual's picture as an incident to some important public event, and the exploitation of that individual as the important and central part of an event which is not of real public importance, however great may be the public interest therein. In this case it is clear that Mrs. Humiston's name and picture are the main point of that part of defendants' film relating to the Cruger murder, and that the defendants are seeking by the use of her name

and picture to make money out of her reputation and prominence. She is not the commander of an army, a visiting ambassador or even a public official, but a private citizen practicing her profession as a member of the bar, who is entitled to be protected in her right of privacy.

It is conceded that the plaintiff gave no written consent to the use of her name and picture, and although it is claimed that she orally consented she denies that fact, and it is immaterial on this motion. So also the fact, if it be a fact, that her name and picture have appeared frequently with her consent in the daily news papers is not material on this motion. All these facts may perhaps be material on the question of her damages, but that is not before me now. As Judge Gray said in the case of *Roberson* v. *Rochester Folding Box Co.*, 171 N. Y. 538, 566: " It would be, in my opinion, an extraordinary view which, while conceding the right of a person to be protected against the unauthorized circulation of an unpublished lecture, letter, drawing, or other ideal property, yet, would deny the same protection to a person whose portrait was unauthorizedly obtained, and made use of, for commercial purposes. The injury to the plaintiff is irreparable; because she cannot be wholly compensated in damages for the various consequences entailed by defendants' acts. The only complete relief is an injunction restraining their continuance. Whether, as incidental to that equitable relief, she should be able to recover only nominal damages is not material; for the issuance of the injunction does not, in such a case, depend upon the amount of the damages in dollars and cents."

Motion for injunction during the pendency of this action granted on plaintiff giving an undertaking in the sum of $2,500.

Motion granted.