Callahan, J.
This appeal presents the question of the sufficiency of two causes of action in plaintiff’s complaint which attempt to set forth claims for damages under section 51 of the Civil Rights Law. The “ Fourth ” cause of action refers to a novel published by appellant, and the “ Fifth ” cause of action to a written play published by him, both of which bore the title: “ A Bell for Adano.” For the purpose of this appeal we may consider the causes of action attacked as if they were one, for the same legal question is presented as to each.
Section 50 of the Civil Rights Law provides: “ A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person * * * is guilty of a misdemeanor. ”
Section 51 of the same law, insofar as material, reads as follows.: “ Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent [of said person] first obtained * * * may * * * sue and recover damages for any injuries sustained by reason of such use * *
The gravamen of the causes of action attacked is that, in the novel and play referred to, the events and acts narrated in describing the central figure of the story purport to relate to a person fictitiously called “ Major Victor Joppolo ” who is described as the senior civil affairs officer of the Allied Military Government in a town in Sicily, which is likewise fictitiously called Adano. The events and acts so narrated are alleged by plaintiff to relate, in the main, to events and acts of and concerning him, and that he was in fact the senior civil affairs officer of the Allied Military Government in the town of Licata, Sicily, during its occupation by the Allied Armies of World War II.
Plaintiff calls this narration a “ portrayal ” of the plaintiff, and an exploitation of his acts, life and personality, and says that such a portrayal constitutes a violation of the statute.
Prior to the adoption of sections 50 and 51 of the Civil Rights Law, it had been held in Roberson v. Rochester Folding Box Co. (171 N. Y. 538) that a violation of the right of privacy, as distinguished from the right to be free from libel or slander, was not actionable.
In the Roberson case (supra p. 545) the Court of Appeals, after pointing out that to assert the right of privacy as a general common-law right might open the door to a vast field of litigation, made the following suggestion for action by the Legislature *447 creating a limited right of privacy: “ The legislative body could very well interfere and arbitrarily provide that no one should be permitted for his own selfish purpose to use the picture or the name of another for advertising purposes without his consent. In such event no embarrassment would result to the general body of the law, for the rule would be applicable only to cases provided for by the statute.”
In the year following the publication of the Roberson decision (supra) sections 50 and 51 of the Civil Bights Law were enacted into law (L. 1903, ch. 132).
In holding the new sections constitutional, the Court • of Appeals, in Rhodes v. Sperry S Hutchison Co. (193 N. Y. 223), stated that there was little doubt but that these laws were prompted by the suggestion of the court in the Roberson case (supra).
Later, sections 50 and 51 were considered and construed in Binns v. Vitagraph Co. (210 N. Y. 51). In that case a moving picture was published based on true occurrences in the life of one John Binns, who had been a radio operator on a steamship, and had been the first to use wireless to broadcast distress signals at sea. The picture was largely fictional in form, but the name of John Binns was used in the scénario, and in advertisements of the picture, and an actor was made up to look like and impersonate Binns.
The court held that the statute had been violated and that Binns had a cause of action under the Civil Bights Law. The court pointed out that the statute was, in part at least, penal, and should be construed accordingly. It further pointed out that not every use of the name, portrait or picture of a living person was prohibited, but only those for trade purposes. It found that in the case before it the moving picture was not that of a current event, but largely a product of the imagination, and that it was actionable.
In the course of its opinion in the Binns case {supra), the court, in discussing the effect of the use of an actor to portray Binns, .said (p. 57): “ A picture within the meaning of the statute is not necessarily a photograph of the living person, but includes any representation of such person. The picture represented by the defendant to be a true picture of the plaintiff and exhibited to the public as such, was intended to be, and it was, a representation of plaintiff. The defendant is ih no position to say that the picture does not represent the plaintiff or that it was an actual picture of a person made up to look like and impersonate the plaintiff.”
*448 The plaintiff in the present action relies largely on the statement found in the first sentence of the paragraph quoted to support his “ Fourth ” and “ Fifth ” causes of action. He says that it indicates a construction of the statute by the Court of Appeals sufficiently broad to support a cause of action based on a word portrayal of the events in the life of a living person, even where fictitious names appear and no picture or similar likeness is used. In other words-, he says that “ portrait or picture ” as used in the statute, has been construed to include any representation of a living person which would include one in words or substance describing events that would be recognizable as acts and events’ of and. concerning a living person.
We do not place any such construction on the statement found in the opinion in the Binns case (supra), nor upon the statute itself. Considered in the light of the facts involved in the Binns case (supra), and the questions that were being discussed, the statement relied on was merely a holding that where the name of a living person is used in advertising for trade purposes, coupled with a picture of a person represented to be a likeness of that named person, there has been a violation of the statute, even though the person posing for the picture was not in fact the person named. But, in the present case, no living person was named, and no picture or other similar likeness of anybody was used.
Giving the language used in section 51 its ordinary meaning, we find that it was not intended to give a living person a cause of action for damages based on the mere portrayal of acts and events concerning a person designated fictitiously in a novel or play merely because the actual experiences of the living person had been similar to the acts and events so narrated. To so construe the statute would broaden its scope far beyond anything warranted by the meaning that would ordinarily be ascribed to the words “ name, portrait or picture ”, especially when they are considered in the light of the history of the statute.
The order, so far as appealed from, should be reversed, with $20 costs and disbursements to the defendant-appellant and the motion to dismiss the “ Fourth ” and “ Fifth ” causes of action granted, with leave to the defendant-appellant to answer within twenty days after service of the order with notice of entry thereof.
Dobe, J. (dissenting). The language of the statute, section 50 of the Civil Bights Law, is in the disjunctive: the cause of action may be based on the use for trade purposes of (1) the name or (2) portrait or (3) picture of a person without his consent.
*449 The Court of Appeals construing the meaning of this statute has expressly held that a picture is not necessarily a photograph “ but includes any representation of such person ”. (Italics mine.) (Binns v. Vitagraph Co., 210 N. Y. 51, 57.) Reason as well as authority supports the construction. A person may be pictured or portrayed through the medium of words as well as through other art media such as paintings or sculpture.
This does not mean, as suggested, that it may be a violation of the statute for a writer to base a novel or play on events that occurred in the life of any living person. Basing the novel or play on certain events is one thing. Reproducing or portraying in fiction for trade purposes a living person as the chief character in a play without his consent is quite another. For the purpose of this appeal we must assume as true all the facts alleged in the fourth and fifth causes of action challenged by the motion to dismiss. The pleadings allege that plaintiff was the senior civil affairs officer whose person is portrayed for trade purposes without his consent and the reference is not merely to casual or incidental events in plaintiff’s life, but the portrayal of his person is the primary subject matter of both novel and play. Defendant has capitalized on plaintiff’s identity in fiction for his own commercial trade purposes without plaintiff’s consent.
Special Term correctly held the causes of action sufficient and denied the motion to dismiss.
Accordingly, I dissent and vote to affirm.
Martin, P. J., Townley and Glennon, JJ., concur with Callahan, J.; Dore, J., dissents and votes to affirm in opinion.
Order reversed, with $20 costs and disbursements to the defendant-appellant and the motion to dismiss the fourth and fifth causes of action granted, with leave to the defendant-appellant to answer within twenty days after service of order, with notice of entry thereof.