Abraham J. Gellinoff, J.
This is a motion by plaintiff for summary judgment. Defendant counters with a request for summary judgment dismissing the complaint.
The action seeks damages for the alleged violation of plaintiff’s right of privacy through television broadcasts on defendant’s stations in New York and Illinois on January 5, 1962, and in December, 1962, respectively. It is claimed that the New York broadcast was made without plaintiff’s consent, for purposes of trade, in violation of sections 50 and 51 of the Civil Rights Law of this State. The motion has been withdrawn insofar as it is based upon the common-law right of privacy claimed to obtain in Illinois.
Plaintiff is Prince Felix Youssoupoff, a member of the former Russian royal family, who now resides in Paris, France. In 1916 plaintiff admittedly murdered the Russian monk, Rasputin, in consummation of a conspiracy aimed at terminating Rasputin’s evil influence upon the Czarina and, through her, upon the Czar himself. Plaintiff himself has written two books, one published in 1927, and the other in 1952, in which he has described the plot and the details of the killing of Rasputin.
Defendant has admitted in its answer that it broadcast a dramatic sketch or play entitled “ If I Should Die ”, in which an actor impersonated the plaintiff. The moving affidavit on plaintiff’s motion, made by one of his attorneys, avers that the broadcast “was not a depiction of the actual events as they occurred ’ ’; that it was 1 ‘ not a straight historical recital of those events that it was a “ dramatization with dialogue and action fictional in form”; that, therefore, plaintiff’s statutory right of privacy was invaded (Civil Rights Law, §§ 50-51), and that the only issue remaining to be tried is the amount of plaintiff’s damages. The affiant states that she was permitted to see a private screening of the play, prior to the commencement of the action, and that a cursory inspection thereof by the court will demonstrate that the play was a fictional dramatization, and in no sense of the word a documentary.”
One of the coauthors of the script of the play has submitted an affidavit stating that every effort was made to adhere to the historical facts. It gives the names of four books which were *44 read and consulted for that purpose. An affidavit by the producer of the play states that he personally checked source materials relied upon by the authors to satisfy himself that the events depicted were entirely accurate and that he believes that the New York broadcast “ is a most accurate description of the events surrounding the death of Rasputin ’ ’. Defendant also submits an affidavit in which it offers to exhibit on a screen for the court a 16 mm. film print of the magnetic tape reproduction of the play, which was used in the New York broadcast. It also submits for the court’s inspection the two books written by the plaintiff and two other books dealing with Rasputin’s death.
In accordance with the request of plaintiff’s attorney and defendant’s offer, the court has witnessed a reproduction of the broadcast on 16 mm. film. In addition, it has examined a photostat of the script submitted by defendant, stated by it to be ‘1 quite accurate ’ ’.
Solely for the purposes of plaintiff’s motion for summary judgment, plaintiff has accepted ‘‘ defendant’s claim of historical accuracy ”. Plaintiff claims, however, that even if the play is historically accurate, his right of privacy was violated by the impersonation of him by an actor and by the use of manufactured dialogue. Defendant, on the other hand, contends that the use of an actor to impersonate plaintiff and the use of imaginary dialogue are not sufficient, in themselves, to constitute the broadcast a violation of plaintiff’s statutory right of privacy.
The case of Lahiri v. Daily Mirror (162 Misc. 776) is a leading decision on the subject of the unauthorized use of a person’s name or photograph in newspaper publications. It has been quoted or referred to with approval by both State and Federal appellate courts (Gautier v. Pro-Football, 304 N. Y. 354, 359; Molony v. Boy Comics Pubs., 277 App. Div. 166, 168-169; Sidis v. F.-R. Pub. Corp., 113 F. 2d 806, 810, see, also, footnote 7 on p. 810). The opinion of Mr. Justice Shientag, in the Lahiri case states (supra, p. 782) that there may be no recovery under the statute for use of a person’s name or photograph “ in connection with an article of current news or immediate public interest ’ ’ and that, as a general rule, articles which are not strictly news, but which “ are used to satisfy an ever-present educational need”, such as “ stories of distant places, tales of historic personages and events, the reproduction of items of past news ’ ’ are not within the ban of the statute.
In Molony v. Boy Comics Pubs. (supra), the majority opinion, written by Mr. Justice Yaw Yoobhis, now a Judge of the Court of Appeals, states (p. 170) that “ These classifications apply, with some possible distinctions, to books and magazines ”, and *45 the opinion declares that (p. 170) “It is well settled that the right of privacy does not prohibit the publication of matter which is of legitimate public or general interest, although no longer current ” (emphasis supplied).
The same principles are applicable to filmed publications, such as newsreels, and television broadcasts (Gautier v. Pro-Football, supra). At page 359 of the Gautier case (supra), the Court of Appeals used the following language: “ Like other media of communication, television may have either a trade aspect or an informative or news aspect. In the latter situation, it should be entitled to the same privilege accorded other such media where the statutory right to privacy is drawn in issue ”.
However, this privilege to use a person’s name or photograph in portrayals of current news or of past events of legitimate public or general interest does not, under our privacy statute, extend “ to commercialization of * * * personality through a form of treatment distinct from the designation of news or information” (Gautier v. Pro-Football, supra, p. 359). The statute does apply if the treatment is fictionalized (Binns v. Vitagraph Co. of America, 210 N. Y. 51; Sutton v. Hearst Corp., 277 App. Div. 155; Molony v. Boy Comics Pubs., 277 App. Div. 166, 171-173, supra; Koussevitzky v. Allen, Towne & Heath, 188 Misc. 479, affd. 272 App. Div. 759).
The attorneys for both plaintiff and defendant agree — at least insofar as this case is concerned — that defendant’s liability under the privacy statute depends upon the determination as to whether or not the use of an actor to impersonate plaintiff and of imaginary dialogue necessarily constitutes fictionalization within the meaning of the authorities. No decision of a court of this State has been called to this court’s attention in which this narrow question has been squarely decided.
Plaintiff relies heavily on the leading case of Binns v. Vita-graph Co. (210 N. Y. 51, supra). It is true that in that case the court, in holding the defendant liable, stated that the motion picture was (p. 56) “mainly a product of the imagination” and that the series of pictures had been made (p. 52) with prepared scenery and actors to impersonate the plaintiff and others. There were, however, other important factors present in the Binns case upon which the court relied in finding the defendant liable. The motion picture purported to portray (p. 58) Binns’ individual “peculiarities * * * of dress and walk”, his 11 personal fads, eccentricities, amusements and even his private life. ’ ’ The last picture of the series £ £ had no connection whatever with any other place or person or with any event ” (p. 58) and related to personal movements of Binns which had no con *46 nection with the rescue at sea in which Binns had figured as a wireless operator. One of the defendant’s officers had admitted at the trial that the picture was largely the product of imagination, saying (p. 56) “We have to use our imagination largely in those cases ”. In the Molony case (supra, p. 173), the court, referring to the Binns case (supra), points out that the last picture of the series was purely fictional and that Binns was depicated therein as smiling, winking and contorting his face solely for the amusement of spectators. Binns was not depicted in that picture as taking part in a current event or any event whatever. In view of these additional facts, the Binns case is by no means clear authority for the proposition that the mere use of an actor to impersonate the plaintiff and of manufactured scenery and dialogue is sufficient, in itself, to create liability under our privacy statute.
Although the court in the Molony case (277 App. Div. 166, supra), as one of the grounds for distinguishing the Binns case (supra), stated that in the Molony case (p. 173) the plaintiff ‘ ‘ was not impersonated ’ ’, other language of the opinion indicates that it did not regard impersonation or dramatization alone as determinative. Thus the court said (p. 171): “ Moving pictures, such as the March of Time, are not prohibited under ordinary circumstances, merely for the reason that, to some extent, persons are impersonated who are in the public eye, and the events dramatized.”
In Koussevitzky v. Allen, Towne & Heath (188 Misc. 479, supra), the plaintiff complained that the publication of an unauthorized biography of his life was a violation of his right of privacy. Mr. Justice Shientag, who wrote the opinion below, expressly recognized that the biography would constitute a violation of the privacy statute if it were fictionalized; nevertheless, although the book contained various untrue and even defamatory statements about the plaintiff, he held that the biography was not so fictionalized as to bring it within the purview of the statute. He pointed out that very little was said in the book about the plaintiff’s private life, and that (p. 485) 11 There are * * * no so-called revelations of any intimate details which would tend to outrage public tolerance. There is nothing repugnant to one’s sense of decency or that takes the book out of the realm of the legitimate dissemination of information on a subject of general interest ”. Mr. Justice Shiestag, in the Koussevitzky case (supra), further held (p. 484): “ That it may contain untrue statements does not transform it [the book] into the class of fiction. * * * Truth or falsity does not, of itself, determine whether the publication comes within *47 the ban of sections 50 and 51.” This holding was affirmed by our Appellate Division (272 App. Div. 759).
In the light of the statement in the Molony case, that motion pictures, such as the March of Time, do not violate the statute merely because of impersonations and dramatization, and the holding in the Koussevitzky ease, that untruths do not necessarily constitute such fictionalization as would cause a publication to come within the prohibition of the statute, this court is of the opinion that plaintiff’s cause of action is not established by proof in the moving affidavit merely that an actor impersonated plaintiff and that the scenery and dialogue were the product of the script writers’ imagination.
Comparison of the script with the contents of the two books written by plaintiff himself reveals that, as far as the dialogue goes, the portrayal of plaintiff’s personality and character are no different from that contained in his own published versions of Rasputin’s killing. Although the dialogue is necessarily fictional, it is entirely innocuous as far as plaintiff’s reputation, personality, or character are concerned. As in the Koussevitsky case, there are no revelations of intimate details about the plaintiff which would tend to outrage public tolerance or which are repugnant to the public sense of decency. To the extent that depicting plaintiff as the killer of Rasputin — in a setting which portrays Rasputin’s evil influence upon the monarchy, and which lauds the idealistic motives of plaintiff in putting an end to Rasputin’s life — to the extent that this might hold plaintiff up to public scorn or outrage decency, plaintiff may not complain, for the killing by plaintiff is an historical fact, in the public domain, where plaintiff, by his own writings, helped to put it.
Nor is the portrayal of plaintiff by the actor who impersonated him in the broadcast — which the court witnessed — in any way calculated to injure in the slightest plaintiff’s character or reputation. The part is inoffensively acted by the person impersonating plaintiff and the effect on the viewer is no different from the effect produced by the reading of plaintiff’s own books on the subject of the conspiracy and its consummation.
Had defendant published an article describing the conspiracy and its culmination in the assassination of Rasputin, it would concededly not have been liable if the description was in accord with the historical facts. In view of plaintiff’s concession that the drama was “based upon ” historical fact, the court holds that the use of the drama form, with an actor impersonating plaintiff and the scenery and dialogue the product of the author’s imagination, does not of itself, as a matter of law, convert privilege from responsibility under our Civil Rights Law into lia *48 bility. To make out a good cause of action, plaintiff must show in addition, that the portrayal of plaintiff by the actor who impersonated him, or the dialogue employed, tended to outrage public opinion or decency in respects other than those produced by the admitted historical facts.
Apart from what has been said, plaintiff, although conceding that the broadcast was not used for advertising purposes, has failed sufficiently to establish that it was used for trade purposes (Civil Bight Law, §§ 50-51).
As stated in Gautier v. Pro-Football (278 App. Div. 431, 436, affd. 304 N. Y. 354, supra): ‘ ‘ Each case must be decided on a weighing of conflicting policies: the public interest in free dissemination of information against the interest in the preservation of the inviolate personality. Among the relevant factors in such decision are .the media used, the nature of the subject matter and the extent of the actual invasion of privacy.” (See, also, Hill v. Hayes, 18 A D 2d 485.)
On the present submission it is impossible to test the necessary criteria in order to determine whether the broadcast was for purposes of trade. A trial, at which all the circumstances of the broadcast are developed, is necessary in this case to establish that there has been “commercial exploitation” of plaintiff’s personality (Hill v. Hayes, supra).
For the foregoing reasons, plaintiff’s motion for summary judgment must be denied.
Defendant, in one of the answering affidavits, has requested that summary judgment dismissing the complaint be entered in its favor. Buie 113 of the Buies of Civil Practice expressly authorizes such relief, even in the absence of a cross motion therefor, if, on the papers submitted, the defendant is entitled thereto. It should be noted, however, that, since plaintiff’s motion is limited to the New York broadcast and does not apply to the Illinois broadcast, defendant’s request for dismissal of the complaint without a formal cross motion does not involve the Illinois broadcast, to which the common law of Illinois applies.
The concession of plaintiff that the dramatization in the broadcast was based on historical fact is expressly limited to the consideration of plaintiff’s motion. It does not apply to defendant’s request for judgment in its favor. Defendant’s answering affidavits claim that the script was based on historical research and that every effort was made to adhere to the record events. The coauthor states that she “ believes ” that the script “ faithfully recreated this historically significant event
*49 Defendant’s affiants have no personal knowledge of the facts and can only express their belief, based upon research. Plaintiff’s reply brief asserts that a question of fact exists “as to whether the events depicted are in truth historically accurate ”. In the court’s opinion the script appears to conform to the version contained in plaintiff’s own books on the Rasputin conspiracy and killing, but that is only the court’s opinion. The record is otherwise devoid of proof of fact save for the opinions thus expressed. In these circumstances, defendant’s request for judgment must be denied.
Plaintiff’s motion for summary judgment and defendant’s motion for summary judgment are each denied.