Fuld, J. (dissenting).
The article, published (in 1955) by the defendant in its magazine Life, on which the plaintiff’s cause of action is predicated, read in this way:
“ True Crime Inspires Tense Play
‘ ‘ The Ordeal of a Family Trapped by Convicts Gives Broadway a New Thriller,
[1] The Desperate Hours ’
‘ ‘ Three years ago Americans all over the country read about the desperate ordeal of the James Hill family,
*988 who were held prisoners in their home outside Philadelphia by three escaped convicts. Later they read about it in Joseph Hayes’s novel, The Desperate Hours, inspired by the family’s experience. Now they can see the story re-enacted in Hayes’s Broadway play based on the book, and next year will see it in his movie, which has been filmed but is being held up until the play has a chance to pay off.
‘ ‘ The play, directed by Robert Montgomery and expertly acted, is a heart-stopping account of how a family rose to heroism in a crisis. Life photographed the play during its Philadelphia tryout, transported some of the actors to the actual house where the Hills were besieged. On the next page scenes from the play are re-enacted on the site of the crime.”
The article also contained photographs of an actual news headline relating to the plaintiff’s experience (of three years previously), of the house in which the plaintiff and his family then lived and in which they were held captive and of actual stage settings of the play.
I do not believe that section 51 of the Civil Rights Law may be availed of to create a cause of action against those who published an article reporting a new play, unquestionably a subject worthy of press comment, and pointing out that there was a relationship between the play and an actual event, also concededly newsworthy, in which the plaintiff some years before had been involved. There can be no doubt that the play certainly bore a close and legitimate relationship to the real-life incident as, indeed, the columnar comparison made by the defendant in its brief strikingly reveals. Moreover, the author of the story (Joseph Hayes), called as a witness for the plaintiff, testified that the real-life Hill case “stimulated” and “ inspired ” his writing of the play, that it “ triggered the book in a very direct way ’ ’ and that the Life magazine heading, “True Crime Inspires Tense Play”, was “certainly correct, that true crime did inspire my play ”.
Section 51 of the Civil Rights Law does not, of course, proscribe the use of an individual’s name or picture in connection with a news article of general interest. (See, e.g., Binns v. Vitagraph Co., 210 N. Y. 51, 56; Gautier v. Pro-Football, 304 N. Y. 354, affg. 278 App. Div. 431; Booth v. Curtis Pub. Co., *989 11 N Y 2d 907, affg. 15 A D 2d 343.)[1] Accordingly, since the experience of the Hill family in 1952 was newsworthy and since there was a substantial relationship between that experience and the play, which was also a matter meriting news coverage, it would seem to follow that the defendant did not, by its article in Life, violate or offend against the provisions of the statute.
Three years had elapsed between the Hill incident and the publication of the article. That, however, cannot be said to render the story about the Hill experience stale news, particularly when it was related to the reporting of a current play which, according to its author, was inspired and triggered by the real-life event. And, once it be established that the reported matter is newsworthy, I query whether the fact that the article may also have been intended to advertise or promote the play is, in and of itself, sufficient basis for subjecting the defendant to a cause of action under the provisions of the Civil Rights Law. If the article is of such a nature as not to come within the proscription of section 51—because it is, on its face, an account of newsworthy information—it is not brought within its coverage by virtue of the fact that it may, incidentally, have been written with an eye toward promoting the play or, as is the underlying purpose of every article, in the hope of bolstering the magazine’s own appeal and circulation. As Presiding Justice Boteix wrote, in dissent below, “ To hold * * * that a violation of section 51 may be established by a showing that a newsworthy item has been published solely, to increase circulation injects an unrealistic ingredient in the complex of the right to privacy, and would abridge dangerously the people’s right to know ’ ’.
In short, it is my judgment that the plaintiff failed to make out a case and, accordingly, I would reverse the judgment appealed from and dismiss the complaint.
Judgment affirmed, etc.

. In the Gautier case, the Appellate Division, speaking through Shientag, J., declared (278 App. Div., at p. 435): “ Cognizant of the overriding social interest in the dissemination of news, an almost absolute privilege has been extended to the use of names and pictures in connection with the reportage of news. * * * Once an item has achieved the status of newsworthiness, it retains that status even when no longer current ”.