Bergan, J. (dissenting).
Had the Supreme Court agreed with our decision at 18 N Y 2d 324 upholding the constitutional validity of sections 50 and 51 of the Civil Rights Law as applied to Spahn’s case, it would normally have affirmed in due course. Instead, it remanded the case back here for further consideration in view of Time, Inc. v. Hill (385 U. S. 374).
This seems to imply that on the present record the court disagrees with our earlier determination to sustain the statute against the argument of defendants that, as invoked by Spahn, it invades the constitutionally protected freedom of the press.
Of course, the converse is also true, that the court could have reversed on the present record if it could see that the case could not be re-examined according to different criteria. But it could not necessarily see that and would then leave it open to the State court to re-examine.
Therefore, one alternative open to us is to remit the case to the trial court to examine and decide the right of plaintiff to recover *130 on showing “calculated falsehood” against which “the constitutional guarantees can tolerate sanctions ” (Hill, p. 389); or a “‘reckless disregard of the truth’” (id., p. 390) which is treated similarly. (See, further, New York Times Co. v. Sullivan, 376 U. S. 254; Garrison v. Louisiana, 379 U. S. 64.)
These specific criteria were neither pleaded nor established on this record which essentially rests on an asserted violation of the statute by an actionable invasion of privacy in fictionalized biographical material relating to plaintiff.
The theory of the case, as presented, was that fictionalization relating to plaintiff’s life was itself actionable under the statute as the New York courts have construed it. (See, e.g., Binns v. Vitagraph Co., 210 N. Y. 51; Goelet v. Confidential, Inc., 5 A D 2d 226; Koussevitzky v. Allen, Towne & Heath, 188 Misc. 479, affd. 272 App. Div. 759.)
The case was not based, therefore, on a consideration of “ reckless disregard of the truth ” or “ calculated falsehood ” in the sense the Supreme Court used these terms. If, upon re-examination it were found that the material complained of was merely ‘ ‘ innocent or negligent ’ ’ in writing and publication, it would seem then to be necessary to give judgment for defendants (Hill, p. 389 ). There seems to be no suggestion that the publication would be proved on a further examination to be more than that.
Even though the fictionalized parts were literally not true, the writer seems to have regarded the fiction as consistent with Spahn’s life and possible or even likely. As to certain dialogue complained of, for example, both sides stipulated in the record that it ‘‘ was written by the author to interpret what he thought the facts were ”.
The direction of movement of the cases interpreting the constitutionally shielded freedom of the press suggests that the protection to defendants should now be more broadly based than either the narrow grounds that would rest on the Hill criteria, or those laid down by our prior decisions. It does not seem probable, reading Hill and New York Times together, that fiction alone concerning a public figure, actionable under the New York statute as construed, is any longer actionable.
Spahn is a public figure by his own choice. He is not a public official coming literally within New York Times or Garrison, *131 but the right to print and publish material about a public figure rests on similar policy considerations even though they are not chosen at elections after public debate on their merits. A vast area of public discussion would be closed off if the press could speak much less freely of public figures than of public officials.
At least no good reason exists for imposing sharp discrimination. The material complained of here is not much more a ‘ ‘ purely private defamation ’ ’ than writing false statements about State officers (Garrison, supra, p. 76).
Therefore, it should be held that as to a public figure willingly playing that role, the New York privacy statute gives no protection against fictionalization not shown to hurt him and not shown designed to hurt him. There is, in the term ‘‘ calculated falsehood ”, as used in New York Times and Hill, some of the traditional common-law overtones of meaning in the sense of wrongful injury.
To a fictionalized account of a public figure it is difficult to apply precisely the criteria of Hill or New York Times. All fiction is false in the literal sense that it is imagined rather than actual. It is, of course, “ calculated ” because the author knows he is writing fiction and not fact; and it is more than a ‘‘ reckless ” disregard for truth. Fiction is the conscious antithesis of truth.
These categorical assignments do not quite accurately encompass the situation of which Spahn complains and on which defendants claim their constitutional privilege to write and print. This can be met by holding that fiction concerning a public figure, if not actually damaging, is not actionable. There may be other situations in which a broader application of the privilege would be required, but this will meet the needs of the present case. The New York privacy statute should no longer be construed as creating a valid action in Spahn’s case.
The order should be reversed.
Judges Van Voorhis, Burke and Scileppi concur with Judge Keating ; Judge Bergan dissents and votes to reverse in a separate opinion in which Chief Judge Fuld concurs; Judge Breitel taking no part.
Order affirmed.