Arnold L. Fein, J.
In this action for a permanent injunction and damages, plaintiffs move for a temporary injunction to restrain defendants from publishing plaintiffs’ pictures, names or biographical accounts of their lives, or purported first person narratives by any of the plaintiffs. Plaintiffs rely most heavily on the causes of action on behalf of plaintiffs Smith, Wilson and Thomas and their families.
This case arises from the publication of a book, entitled “ The Block,” written by defendant Herb Coro (Coro), which purports to depict living conditions in a slum block in the southeast Bronx, by means of photographs of, and alleged statements about their lives by people who live and work in the block. The book was published by defendant Random House, Inc., and excerpts have been published in New York Magazine owned by defendant NYM Corporation.
All three defendants cross-move by separate motions to dismiss the complaint for failure to state a cause of action and upon documentary proof, to wit, releases allegedly signed by plaintiffs.
The 23 plaintiffs all reside in the block. Their photographs appear in the book. Their purported statements make up the bulk of its narrative. Their complaint, set forth in 35 causes of action, pleaded in 95 paragraphs, is basically predicated on unauthorized use of their photographs and names in violation of sections 50 and 51 of the Civil Rights Law. They further complain that (1) the alleged biographies and statements are fictionalized and false and contain imaginary thoughts and attributed feelings; (2) such statements and consents as they did give were obtained through fraud, misrepresentation and overreaching; and (3) publication of the unauthorized biographies constituted a breach of confidence by defendant Coro.
In support of the motion for a temporary injunction, plaintiffs Mary Thomas and David Wilson submit affidavits alleging that the use of their names and pictures and those of members of their families were without permission or consent. Eight, plaintiffs are members of the Thomas family. Seven are mem- . bers of the Wilson family. Many of the plaintiffs are infants. *1013 Plaintiffs charge that the publication is a complete invasion of their privacy and affects them adversely in their community, subjecting them to ridicule, humiliation and embarrassment. In addition to photographs of the Smiths, Thomases and Wilsons, the book and magazine article purport to describe and depict plaintiffs’ homes and lives and to quote their views, in extenso. Much of the narrative is in the first person form and describes the most intimate details of plaintiffs’ private lives. Each plaintiff claims that Goro deceived him or her when he interviewed them to obtain the material for this book. Plaintiff John Smith alleges that much of the material concerning his life is false and distorted. Moreover, he asserts that whatever he told Goro was private and confidential, related in order to get help and assistance and not for publication in this kind of a book. He states that as a young man of 18, he relied on Goro, an older man on the basis of confidentiality and friendship which he claims was betrayed.
Goro states that he was engaged by a foundation to write a book about the problem of unemployment and automation. He selected a slum section in the southeast Bronx as the locale for his book. He chose plaintiffs’ block as symptomatic and representative of the slum conditions prevailing in the entire area. Plaintiffs were selected by him as typical residents to illustrate the life and times of the community and its residents and their problems. He spent a year on the project, employing a tape recorder and camera to record his observations. He claims that he informed the people in the area that he was employed by the foundation to obtain material for a book that would demonstrate the terrible poverty and miserable living conditions in the area, in order to awaken an unaware public to the horror and tragedy permeating the lives of these slum dwellers. His purpose was to generate drastic social change urgently needed to bring about better living conditions, decent housing, satisfactory employment and general uplift of the entire area and others like it.
After publication, he endeavored to obtain releases from all of the persons whose photographs appeared in the book. He has submitted photostats of releases from Hattie Smith for her son John and Geneva Smith, and from Ethel Jones for her daughter Suwon Jones, now Suwon Smith. He asserts he gave Hattie Smith, $200, Ethel Jones, $200, Geneva Smith, $50, and lesser amounts to some of the others. He did not obtain releases from any of the Thomases or the Wilsons. The releases appear to be form type releases for photographs of models, which do not refer to the alleged narrative material in the book or its subject matter.
*1014 Plaintiffs contend that their consents were obtained by fraud, overreaching and misrepresentation by Groro. Gforo denies knowingly making any mistakes of fact in the book. He asserts the book was written with the co-operation of everyone depicted in it, was obtained through truthful and accurate statements and on the basis of friendships developed over a year’s association with the subjects and not by fraud.
Defendants Random House, Inc. and Gforo argue that the complaint is legally insufficient because the use of such photographs, names or biographies is constitutionally protected as free speech, if published in connection with a public interest. None of the plaintiffs are public figures. None have ever been publicized before. In this sense, they are obscure people. Their involvement in the book is not incidental or as mere spectators on the scene. They are rather important subjects of the book. In effect those who are portrayed and described in it are the book. They claim that precisely for this reason they are being exposed to public ridicule and shame, as examples of poverty stricken people living in a slum area, whose private lives are exposed to public scrutiny for purposes of private gain.
Defendant NTH Corporation claims that the excerpts published in its New York Magazine constituted a constitutionally protected newsworthy account of serious and tragic social conditions, which are and should be of urgent public interest, and thus do not come within the ambit of sections 50 and 51 of the Civil Rights Law.
Both the article and the book portray the desperate and unfortunate conditions under which plaintiffs were required to live. Undoubtedly the lives and the plight of the poor, the underprivileged, and the depressed minorities are, and of right ought to be of public interest, concern and action. The issue is whether it necessarily follows that such people, being natural subjects for study, have no right of privacy.
The cases relied on by defendants do not clearly speak to this issue. It is now well settled that in the light of the constitutional guarantee of free speech, section 51 of the Civil Rights Law may not be applied to afford relief either to a public figure or to one whose life or activity has become a matter of public interest, in the absence of proof that the published material is false and has been published with knowledge of its falsity or in reckless disregard of the truth. (Time Inc. v. Hill, 385 U. S. 374 ; New York Times Co. v. Sullivan, 376 U. S. 254 ; Sidis v. F-R Pub. Corp., 113 F. 2d 806, cert. den. 311 U. S. 711 ; Cullen v. Grove Press, 276 F. Supp. 727 ; Estate of Hemingway v. Random House, *1015 23 N Y 2d 341 ; Spahn v. Julian Messner, Inc., 21 N Y 2d 124 ; Man v. Warner Bros., U. S. Dist. Ct. So. Dist. N. Y., Aug. 31, 1970, McMahon, J.) In essence these cases establish that the constitutional guarantee of free speech and a free press protects factual reporting concerning newsworthy persons and events, overriding the right of privacy, statutory or otherwise. In such instances the public interest, the right to know, is paramount, albeit publication may embarrass or humiliate or otherwise distort the subject. It is then immaterial that consent has not been obtained or even that there has been an express prohibition against publication (Time, Inc. v. Hill, supra; Sidis v. F-R Pub. Co., supra ; Man v. Warner Bros., supra ; Gautier v. Pro-Football, 304 N. Y. 354). However, where the publication is essentially fictional or false, the rule is otherwise. This is no longer the reporting of news and it merits no protection as such. (Spahn v. Julian Messner, Inc., supra) Binns v. Vitagraph Co., 210 N. Y. 51.)
On these motions, it is not necessary to deal with questions of burden of proof, to which some of these cases address themselves. At least for purposes of the motions to dismiss, the allegations of the complaint, although inartistieally drawn, must be taken as true. With respect to the motion for an injunction, there are manifestly sharp issues of fact. Thus, on all the motions there are issues of fact as to whether the publications were essentially truthful, whether there were releases and the extent and validity thereof, and whether there was a breach of a confidential relationship. These may only be resolved on a trial.
Nor should the complaint be tossed off on motion, where there is a question whether the private lives of these depressed plaintiffs are matters of legitimate public interest because of the conditions of squalor and poverty in which they are condemned to live. Do individuals who are poor, underprivileged arid members of a depressed minority have no right of privacy because of these happenstances? Unlike Hill (supra), where the subjects had been kidnapped, or Sidis (supra), where he had been an infant prodigy, or Cullen (supra), where they were correction officers in a public institution, there was nothing particular about the lives of these plaintiffs that separated them from their fellows as peculiar subjects of public interest so as to preclude their right of privacy. On the face of the papers, at least, it does not appear that they sought or wanted publicity or notoriety. No case has been cited or found which supports the view that a writer may seek out such people and write about them and by that fact alone make them public figures or persons of public interest debarred from claiming an invasion of their privacy.
*1016 Even though the complaint is not a model of clarity and is in some respects redundant, it is not dismissable. On a motion to dismiss a complaint for failure to state a cause of action, where more than one cause of action is pleaded, the sufficiency of any cause of action defeats the motion (Advance Music Corp. v. American Tobacco Co., 296 N. Y. 79). Tho complaint sufficiently alleges a cause of action based on sections 50 and 51 of the Civil Rights Law, and the court need not proceed to any other cause of action. So much of the motions to dismiss as is based upon release can only be applicable to three or four plaintiffs. There are no releases by the Thomases and Wilsons. Moreover, as has been noted, there are disputes, both as to how the releases pleaded were obtained and as to their significance in any event. There are questions of fact whether the releases were blanket consents to the publication of all material which the author might find out about the releasors.
Plaintiffs’ motion for a preliminary injunction is denied as against NYM Corporation, as academic. The material has already been published in a past issue of New York,Magazine.
As to the other defendants, a clear showing for temporary injunctive relief has not been made.
The material complained of has been widely disseminated through its reprinting in New York Magazine and through sales and reviews of the book. Additionally, the issue rests on disputed questions of fact with the result in doubt (Gittlin Bag Co. v. Bresky, 279 App. Div. 570 ; Saslow v. Novick, 19 Misc 2d 475 ; Morrin v. Structural Steel Bd. of Trade, 231 App. Div. 673). In weighing the equities, issuance of a temporary injunction would be more harmful to defendants than its denial would be to plaintiffs. What appears to be really sought here is money damages. Plaintiffs ’ motion must be viewed as brought for such purpose.
Plaintiffs’ motion for a temporary injunction is denied. Defendants’ cross motions to dismiss are denied, without prejudice to pleading the defense of release where applicable in the answers.