■ JOSEPH A. LoRIGGIO, Appellant, v STEVEN SABBA et al., Respondents. [892 NYS2d 387]—

Pursuant to a shareholder's agreement between plaintiff, an attorney and certified public accountant (CPA), and defendant Sabba, the principal shareholder of defendant TaxPro, plaintiff became an employee of TaxPro and acquired a 10% equity interest therein by paying Sabba $100,000 in cash and assuming an obligation to pay Sabba an additional $100,000 with 7.5% interest in five semiannual installment payments. The agreement gave plaintiff the right to rescind "at any time," sell his shares back to Sabba for the "original purchase price," and receive "any accrued profits up to and including the effective date of rescission." Two weeks before the first semiannual payment was due, Sabba announced that a distribution of 75% of income, or $470,000, would be made to the shareholders, and six days after that, plaintiff elected to rescind the agreement. Defendants returned the $100,000 that plaintiff had paid in cash for his shares, but, after initially telling him that payment of his share of accrued profits would be made after the end of the year, they refused to make any further payment. Plaintiff's ensuing claim for breach of contract was dismissed by the motion court on the

ground that he was not entitled to accrued profits, after rescinding the agreement and receiving the return of his initial $100,000 investment, without having completed the five semiannual installments for the remaining $100,000 due on his purchase of TaxPro's shares. This was error.

The agreement clearly and unambiguously gave plaintiff the right to rescind "at any time," i.e., regardless of whether he had completed payment to Sabba for his shares, and, upon rescission, to receive return of the "original purchase price," i.e., $100,000 cash and cancellation of his obligation to pay Sabba another $100,000 (cf. Business Corporation Law § 504 [a]), plus "any accrued profits up to and including the effective date of rescission."

The court also erred in dismissing plaintiff's claim under Civil Rights Law § 51, which creates a cause of action in favor of any person whose name, portrait, picture or voice is used for advertising or trade purposes without written consent (see Cohen v Herbal Concepts, 63 NY2d 379, 383 [1984]). It appears that Sabba is an "unenrolled return preparer" who can represent taxpayers in examinations of tax returns he prepared but cannot, among other things, execute claims for a refund, as can an attorney or CPA (see Internal Revenue Service, Instructions for Form 2848, Power of Attorney and Declaration of Representative, at 1-2 [rev June 2008]). In support of the section 51 claim, plaintiff submitted unrefuted evidence establishing that, after he left TaxPro, Sabba caused two powers of attorney, purportedly signed by plaintiff after his departure date, to be filed with the Internal Revenue Service without plaintiff's written authorization. In addition, Sabba signed plaintiff's name to a financial reference letter submitted to a bank in connection with a client's mortgage application, after the bank had rejected a letter signed by Sabba because he was not a CPA. Defendants' unauthorized use of plaintiff's name and professional qualifications in furtherance of their tax return preparation business was a clear violation of plaintiff's right to control the professional use of his own name (see Binns v Vitagraph Co. of Am., 210 NY 51, 55 [1913]). Any authorization given by plaintiff while he was employed by the firm did not continue after he had resigned and departed (see Welch v Mr. Christmas, 57 NY2d 143, 148 [1982]). Accordingly, plaintiff is entitled to summary judgment as to defendants' liability under section 51.

Plaintiff's proposed claims are either duplicative of the reinstated breach of contract claim or without merit. Accordingly, we affirm denial of his motion for leave to amend the complaint. Concur—Saxe, J.P., Catterson, Moskowitz, DeGrasse and Abdus-Salaam, JJ.