GLADYS LOFTUS, Appellant, *v.* GREENWICH LITHOGRAPHING COMPANY, INC., and JAMES V. RITCHEY, Respondents.

First Department, May 28, 1920.

**Civil rights — suit to restrain use of plaintiff's picture in advertising matter in violation of Civil Rights law, sections 50, 51 — effect of slight changes made in copying — injunction — damages.**

One whose portrait has been used without her consent for advertising purposes has a cause of action under sections 50 and 51 of the Civil Rights Law, though the portrait appearing in the advertising matter is not an exact reproduction, slight changes having been made in the pose by enlargement or otherwise so as to adapt it to the purpose of the advertisement.

On all the evidence, *held*, that the picture appearing on defendant's posters advertising a moving picture film was copied from a photograph of the plaintiff, and that she is entitled to injunctive relief and damages.

APPEAL by the plaintiff, Gladys Loftus, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 28th day of July, 1919, upon the decision of the court rendered after a trial at the New York Special Term.

*Nathan Burkan*, for the appellant.

*Clarence M. Lewis* of counsel [*Jay Leo Rothschild* with him on the brief; *Seligsberg, Lewis & Strouse*, attorneys], for the respondents.

LAUGHLIN, J.:

This is an action predicated on the provisions of sections 50 and 51 of the Civil Rights Law (Consol. Laws, chap. 6 [Laws of 1909, chap. 14], as amd. by Laws of 1911, chap. 226), to enjoin the respondents from using the portrait or picture of the plaintiff for advertising purposes or for the purposes of trade without having her written consent therefor and to recover damages sustained by the plaintiff from such use of her portrait or picture.

The plaintiff is an actress and at the time of the trial in May, 1919, she was twenty-two years of age and was employed

by Mr. Ziegfeld and in the summer of 1917 appeared in the " Midnight Frolics " in a rose garden scene in a special costume called the rose costume, which was made by Lady Duff-Gordon, specially for her prior to July, 1917, and with a hat representing the leaves of a flower. In July, 1917, she had her photograph taken in this costume by Alfred C. Johnson, who testified that he was taking photographs of several of the artists in that play, representing different parts and that he made artistic productions of Miss Loftus in a red costume representing a rose. There is no evidence that this costume was ever upon or worn by any person other than the plaintiff and it is fairly to be inferred from the fact that she so appeared in public that she became well known in that character and would be readily recognized from the photograph and particularly from the costume and pose even though there were as here a slight change in the outline of the features and in the poise of her head incident to enlarging the portrait or picture and adapting it to a particular character by the respondents in the preparation of a poster of a photoplay known as " Shame." The Greenwich Lithographing Company, of which the respondent Ritchey was president, was engaged in designing and selling theatrical and motion picture posters to be used and which were used for trade and advertising purposes in connection with the release of motion pictures. The photograph of the plaintiff so taken by Johnson was introduced in evidence and the plaintiff showed that it was reproduced in the issue of *Harper's Bazaar* for July, 1917, and the *Metropolitan Magazine* for September, 1917, and in the July, 1917, issue of *Town and Country*, but that the plaintiff never consented to the use of her picture by the respondents and had no connection with the photo-play " Shame," and that she did not pose in the photoplay " Shame." The respondents entered into a contract with one Noble or the Duplex Film Company, with which he was connected, by which they agreed to prepare and print the posters for advertising the photoplay " Shame " and pursuant thereto in the latter part of 1917, or early in 1918, they prepared and delivered the posters for that photoplay and they were posted in various parts of the city of New York and vicinity for the purpose of advertising the photoplay " Shame." The posters of said play so prepared by respondents and the

photographic copy thereof were introduced in evidence. The dimensions of the posters were twenty-one feet by nine feet. At the extreme left thereof was printed the following:

" Coming
Soon
To Your
Local
Picture Theatre
Distributed by
Pioneer Film Corp.
Nathan Hirsh, Pres."

A little to the right of the center, the poster contained the following:

" John W. Noble presents
The Photo Play Of The Hour
SHAME
Featuring
Zena Keefe
(A story of the World's unjust condemnation)."

The word " Shame " in this poster was printed in very large letters. The poster represented a man standing between the advertisement at the extreme left and the advertisement a little to the right of the center and looking and pointing his right hand in scorn at a woman represented as standing at the extreme right of the poster with her head slightly bowing. It was conceded by the respondents that they copied and accurately reproduced on this female figure the hat and costume worn by the plaintiff when she had said photograph taken and that the hat and costume on the female figure on the poster was a representation of the hat and costume that appeared on the plaintiff's said picture; and that is perfectly apparent without such concession. Respondent Ritchey testified that in preparing the poster he used a photograph of a man furnished by one Jules Bernstein, who had charge of the distribution of the productions and that he delivered this photo to one Ira Cassidy, an artist in the employ of the respondent company, with instructions to draw for the female character " a picture of any girl with downcast eyes; " that Cassidy made a sketch, painted in water colors and that in preparing

it, so far as concerned the picture of the woman, he had no photograph or model so far as Ritchey knew and that the witness saw him preparing the sketch. The artist Cassidy, although still in the employ of the respondents at the time of the trial, was not called as a witness nor was it shown where or how he obtained the information from which he drew this accurate sketch of the plaintiff's hat and costume and pose with the slight exceptions to which reference has been made. There can be no doubt but that the poster is an accurate enlargement of the hat and costume worn by the plaintiff when she had the photograph taken and that the dimensions of the female figure on which the hat and costume are shown correspond with the dimensions of her figure in the photograph. The photographer Johnson further testified that the photograph of the plaintiff which he took was an accurate likeness of the plaintiff and that the only change he made therein in touching it up was in darkening or lightening; that he resided in Mt. Vernon and that in going back and forth on the railroad he saw one of the posters in question on a billboard in the vicinity of the Boston Post road several hundred feet distant from him and recognized the picture of the woman thereon as an enlargement of the picture of the plaintiff so taken by him and he testified that while the poster was not a photographic copy of his photograph, it was taken from it with slight changes, removing from view the right arm which held a rose and changing slightly the tilt of the head and the outline of the nose, chin and neck and slightly lowering the position of the hair and that in all other respects the poster and picture were substantially identical; and he pointed out that the position of the left hand and fingers on the waist and the curve of the hat and other things were identical with the photograph and further testified that in reproducing a picture in lithography, changes are sometimes made and these changes could have been so produced. At this point, the court remarked: " We may have on the record that the court can see that it is, that it has all the essential features of having been copied from this, but not literally reproduced."

Nearly two months prior to bringing this action, the attorneys for the plaintiff wrote the respondents stating that they had written Bernstein, who represented the producers of the film,

informing him that their client objected to the use of the photograph or the reproduction of it and demanding that all the pictures of her be immediately withdrawn, and that they had received an answer from Bernstein stating that he had referred their letter to the respondents and that the respondents had furnished him with the design and had furnished the paper on which the poster was printed, and that before taking any action they would like to know, among other things, where the respondents obtained the picture of the plaintiff from which the reproduction on the posters was made, and unless they received an answer shortly, they would assume that the respondents did not intend to answer, and they demanded the discontinuance of any further use of the posters and the destruction thereof. The respondents failed to answer that letter. Such failure and the failure to produce the artist who prepared the posters have an important bearing on the question of fact presented as to whether respondents in preparing the posters used plaintiff's photograph and whether it was not copied by them. Plaintiff also testified that a friend drew her attention to the poster on a billboard at Ninety-fifth street and that she went there and examined it and saw that it was her picture.

The learned trial court accepted the testimony of Ritchey to the effect that the artist Cassidy, in designing the poster, produced the face of a woman of his own conception and imagination and that he did not attempt to reproduce the picture of the plaintiff. I am unable to accept this view of the evidence, and I think the learned trial court did not attach sufficient importance to the failure of the respondent company to produce the artist who, it appears, was then in its employ. It was conceded that the artist copied the hat and costume worn by the plaintiff and that he copied them onto a female figure and there is no evidence that they were ever on any other woman. There being no evidence with respect to where or how the artist obtained the copies of the costume and hat and it appearing that he has placed them on the female figure precisely as they were worn by the plaintiff, the only reasonable inference is that the artist must have copied them from a copy of the plaintiff's photograph, and without any proof of the fact we are in effect asked to infer that the artist having

her picture before him to enable him to copy the hat and costume, in so doing covered up her exposed features between the hat and the costume and afterwards drew only on his imagination in sketching the form and features between them. It is perfectly evident that he had and used a copy of the photograph and that he copied the features of the plaintiff, but in order to make the picture fit the subject with the man pointing his hand in scorn at the woman and charging her with shame, it was necessary to tilt her head somewhat to put her in an appropriate attitude. If the wholesome provisions of the Civil Rights Law, upon which this action is based, can be thwarted by using a portrait or picture without consent, provided some such slight change in the pose is made by enlargement of the picture or otherwise, then the statute will be of little use and the purpose for which it was enacted will be defeated. The statute gives such a cause of action to " any person whose name, portrait or picture is used within this State for advertising purposes or for the purposes of trade without the written consent " therefor having been obtained as provided for in the statute. The case, as I view it, falls clearly within the provisions of the statute. The plaintiff, therefore, is entitled to an interlocutory judgment for the injunctive relief prayed for and providing for the assessment of her damages by a jury.

It follows that the findings of fact and conclusions of law inconsistent with these views should be reversed and particularly specified in the order, and the judgment should be reversed, with costs to appellant, and that findings and conclusions in accordance with these views should be made.

CLARKE, P. J., SMITH, PAGE and MERRELL, JJ., concur.

Judgment reversed, with costs, and interlocutory judgment ordered in favor of plaintiff as directed in opinion. Settle order on notice.