■ GUY LOMBARDO, Respondent, v DOYLE, DANE & BERNBACH, INC., et al., Appellants.—In an action to recover damages for (1) breach of contract, (2) invasion of privacy, and (3) the appropriation of plaintiff's public personality for commercial purposes, defendants appeal from an order of the Supreme Court, Nassau County, entered August 10, 1976, which denied their motion to dismiss the second and third causes of action of the complaint. Order modified, on the law, by adding thereto, immediately following the word "denied", the following: "except as to the second cause of action, and, as to the said cause of action, motion granted." As so modified, order affirmed, without costs or disbursements. Sections 50 and 51 of the

Civil Rights Law embody a recognition of the fact that a person has the right to be left alone—to be free of commercial exploitation of his personality (see *Lahiri v Daily Mirror,* 162 Misc 776). The sections are penal in part, and should be construed accordingly (see *Binns v Vitagraph Co.,* 210 NY 51, 55; *Levey v Warner Bros. Pictures,* 57 F Supp 40). Section 50 of the said law provides: "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor." Section 51 provides that any person whose *name, portrait* or *picture* is used within this State for advertising purposes, or for the purposes of trade, without the prior written consent of such person, may maintain an equitable action to prevent and restrain the use thereof and to recover damages by reason of such unlawful use. It is clear that the statute is not to be construed so as to generally prohibit the depiction or representation of the characteristics of the particular complainant. All of the cases cited by the dissenters contain one of the elements of exploitation prohibited by the statute. In *Binns (supra)* the plaintiff's actual name was used. In *Orsini v Eastern Wine Corp.* (190 Misc 235, affd 273 App Div 947) the complainant's surname and family crest were affixed to the labels of certain wine bottles. The combination of the surname and the coat of arms was held to present a method of identification which might be as effective as a full name. In *Uproar Co. v National Broadcasting Co.* (8 F Supp 358, mod 81 F2d 373), the specific identifying factors were the use of the name "Graham" and the actual scripts of broadcasts by Graham McNamee and Ed Wynn. Moreover, the lawsuit involved the use of publication rights and, as such, the court's comment as to the New York privacy statute was merely dictum (8 F Supp p 360). In *Motschenbacher v Reynolds Tobacco Co.* (498 F2d 821, 826), the court, in applying California law to uphold plaintiff's cause of action for appropriation of his name, likeness and personality, against a cigarette manufacturer, cautioned that it did not find it necessary to determine whether such cause of action could be upheld under the "rubric of 'privacy,' 'property,' or 'publicity'" (p 826). In New York there is a distinction between the statutory right which protects living persons from commercial exploitation of their names and pictures without their written consents, as embodied in sections 50 and 51 of the New York Civil Rights Law, and the common-law property right in one's public personality. The statutory right is deemed a "right of privacy" and is based upon the classic right of privacy's theoretical basis, which is to prevent injury to feelings (see *Price v Hal Roach Studios,* 400 F Supp 836; cf. *Doe v Roe,* 42 AD2d 559, affd 33 NY2d 902). Accordingly, in most cases where damages have been awarded under the Civil Rights Law, they have been nominal (see Gordon, Right of property in Name, Likeness, Personality and History, 55 NW UL Rev 553, 567). Similarly, while a cause of action under the Civil Rights Law is not assignable during one's lifetime and terminates at death, the right to publicity, i.e., the property right in one's name, photograph and image is under no such inhibition. In *Lahr v Adell Chem. Co.* (300 F2d 256), the court dismissed the cause of action alleging a violation of sections 50 and 51 of the Civil Rights Law, yet upheld a cause of action alleging appropriation of public personality. It recognized that the two causes of action engender the use of different standards of judgment. In doing so, it refused to construe the word "name" in sections 50 and 51 as applying to an anonymous voice which was purportedly that of the plaintiff, Bert Lahr, and which he claimed connoted his "identity", stating (p 258) "In the absence of any New

York authority, 'name' can be given no such catholic connotation." In upholding the cause of action alleging an infringment of his proprietary interest in his public personality, the court stated that Lahr's peculiar style and type of performance were unique enough so as to pose an issue for a jury. In the case at bar, plaintiff-respondent Guy Lombardo asks that the word "reputation" be equated to "name", and the words "mental image or likeness" to "picture". As set forth above, the statute does not lend itself to such interpretation. Indeed, the word "name" has been construed to mean *full* name (see *People v Scribner's Sons,* 205 Misc 818) and has also been construed not to prohibit the use of the full name of a person because such use was merely "incidental" (see *University of Notre Dame Du Lac v Twentieth Century-Fox Film Corp.,* 22 AD2d 452, affd. 15 NY2d 940; Greenawalt, New York's Right of Privacy—The Need for Change, 42 Brooklyn L R 159; Note, The Right of Publicity—Protection for Public Figures and Celebrities, 42 Brooklyn L R 527). Accordingly, it is clear that the Civil Rights Law is to be strictly construed and is not to be applied so as to prohibit the portrayal of an individual's personality or style of performance. However, there is no question but that a celebrity has a legitimate proprietary interest in his public personality (see *Rosemont Enterprises v Urban Systems,* 72 Misc 2d 788). Guy Lombardo had invested 40 years in developing his public personality as Mr. New Year's Eve, an identity that has some marketable status. The combination of New Year's Eve, balloons, party hats, and "Auld Lang Syne" in this context might amount to an exploitation of that carefully and painstakingly built public personality. As such, it may be entitled to protection (see *Motschenbacher v Reynolds Tobacco Co.,* 498 F2d 821, *supra).* Moreover, if these allegations are proved, there would be an element of deception of the public, an element that was not present in *Murray v Rose* (30 NYS2d 6), a case very similar to the one at bar. In the *Murray* case, the plaintiff, Mae Murray, was a famous dancer and the defendant, Billy Rose, was a famous producer. Plaintiff attempted to enjoin the performance of the "Merry Widow Waltz", and the imitation of her rendition of it. The court refused to do so stating that the dance had been popular before she started performing it, that she had no proprietary rights therein, and that there was no claim that the imitation was other than fair. Unlike the circumstances in *Murray v Rose (supra),* the crux of the third cause of action herein is that the imitation is completely unfair, amounts to a deception of the public, and thus exploits the respondent's property right in his public personality. Hopkins, J. P., Margett and Shapiro, JJ., concur; Titone and Suozzi, JJ., concur as to the affirmance of so much of the order as denied the branch of defendants' motion which sought to dismiss plaintiff's third cause of action, but otherwise dissent and vote to affirm that part of the order which denied the branch of defendants' motion which sought to dismiss plaintiff's second cause of action, with the following memorandum: We disagree with the majority's conclusion that plaintiff's second cause of action does not state a valid cause of action under sections 50 and 51 of the New York Civil Rights Law. Section 51 of the Civil Rights Law prohibits the use of any person's "name, portrait or picture * * * for advertising purposes or for the purposes of trade without * * * written consent", and further provides that an aggrieved party may sue for damages. It is undisputed on this record that the defendants herein, an advertising agency and a foreign automobile manufacturer, entered into negotiations late in 1974 with plaintiff, a well-known band leader, in order to obtain his appearance and services in promoting the manufacturer's product during a filmed television commercial. The commercial was designed to depict plaintiff and his orches-

tra in New Year's Eve party hats, playing "Auld Lang Syne", while several of the manufacturer's cars rotated in the forefront of the television screen. Thereafter negotiations between the parties fell through. Nevertheless, defendants went ahead and completed a television commercial featuring several products of the defendant manufacturer, amidst the background of a New Year's Eve party with all of the usual trappings. With respect to the latter part of the commercial, defendants utilized the services of an actor conducting a band and provided him with the same gestures, musical beat and choice of music (i.e., "Auld Lang Syne") with which plaintiff had been associated in the public's mind for several decades. Plaintiff then instituted suit claiming, *inter alia,* that the defendants had used a "likeness and representation of Plaintiff" for advertising purposes without his consent, thereby violating his right to privacy under sections 50 and 51 of the Civil Rights Law. In support of their motion to dismiss this cause of action, and in their brief, defendants argue that no cause of action was pleaded under the language of section 51 of the Civil Rights Law (i.e., "name, portrait or picture") in view of the fact that plaintiff's name was never mentioned in the commercial, and in view of the fact that an anonymous actor, who did not physically resemble plaintiff, was employed therein. We do not find this reasoning persuasive. In dealing with causes of action alleging a violation of a right to privacy similar to that alleged at bar "the question before the courts has been first of all whether there has been appropriation of an aspect of the plaintiff's identity" (Prosser, Privacy, 48 Cal L Rev 383). In the leading case of *Binns v Vitagraph Co.* (210 NY 51), defendant used plaintiff's name and the services of an actor portraying plaintiff in producing a film depicting plaintiff's heroic act during a prior historical occurrence. The Court of Appeals upheld a verdict for plaintiff under sections 50 and 51 of the Civil Rights Law. In so holding the court stated (p 57): "A picture within the meaning of the statute is not necessarily a photograph of the living person, but includes any representation of such person. The picture represented by the defendant to be a true picture of the plaintiff and exhibited to the public as such, was intended to be, and it was, a representation of the plaintiff. The defendant is in no position to say that the picture does not represent the plaintiff or that it was an actual picture of a person made up to look like and impersonate the plaintiff." Although the *Binns* case is distinguishable from the case at bar in that the plaintiff's full name was used in the former, we do not find that distinction dispositive. The clear intent of the *Binns* case, and of those cases decided subsequent thereto which have dealt with this issue, has been to focus on the nature and quality of the alleged representation, the medium in which it is presented, and the reasonable understanding of the public with respect thereto. In this regard, it should be noted that courts in this and other jurisdictions have upheld causes of action alleging an invasion of privacy, despite the fact that plaintiff's name was not used in its full form, or at all (see *Orsini v Eastern Wine Corp,* 190 Misc 235, affd 273 App Div 947; *Uproar Co. v National Broadcasting Co.,* 8 F Supp 358, mod 81 F2d 373; *Motschenbacher v Reynolds Tobacco Co.,* 498 F2d 821). In these decisions, the alleged representations, in their particular contexts and circumstances, were held actionable on the ground that they could be reasonably understood by the public as identification of the various plaintiffs. In our view, the allegation that the defendants used "the likeness and representation of the Plaintiff" without his consent, states a valid cause of action within the legislative intent of sections 50 and 51 of the Civil Rights Law. Accordingly, that cause of action should not be dismissed, and the ultimate issue of whether the "likeness and representation" depicts the plaintiff, as he alleges, should be left to the trier of the facts to determine.