Robert BURCK d/b/a The Naked
Cowboy, Plaintiff,

v.

MARS, INCORPORATED and Chute
Gerdeman, Inc., Defendants.

No. 08 Civ. 1330(DC).

United States District Court,
S.D. New York.

June 23, 2008.

Halberstadt Curley LLC, by Scott M. Rothman, Esq., Conshohocken, PA, Kevin T. Mulhearn, P.C., by Kevin T. Mulhearn, Esq., Orangeburg, NY, for Plaintiff.

**448**

Arent Fox LLP, by Joseph R. Price, Esq., Ross Q. Panko, Esq., Leslie K. Mithcell, Esq., Sarah I. Marks, Esq., New York, NY, for Defendants.

## OPINION

CHIN, District Judge.

This is the case of The Naked Cowboy versus The Blue M & M.

Plaintiff Robert Burck is a "street entertainer" who performs in New York City's Times Square as The Naked Cowboy, wearing only a white cowboy hat, cowboy boots, and underpants, and carrying a guitar strategically placed to give the illusion of nudity. He has registered trademarks to "The Naked Cowboy" name and likeness.

Beginning in April 2007, defendants Mars, Incorporated ("Mars") and Chute Gerdeman, Inc. ("Chute") began running an animated cartoon advertisement on two oversized video billboards in Times Square, featuring a blue M & M dressed "exactly like The Naked Cowboy," wearing only a white cowboy hat, cowboy boots, and underpants, and carrying a guitar.

In this case, Burck sues defendants for compensatory and punitive damages. He alleges that defendants have violated his "right to publicity" under New York law and infringed his trademarks under federal law by using his likeness, persona, and image for commercial purposes without his written permission and by falsely suggesting that he has endorsed M & M candy.

Three motions are before the Court: Chute moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint; Mars moves pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings; and Burck moves pursuant to Fed.R.Civ.P. 12(f) to strike certain of defendants' affirmative defenses.

For the reasons that follow, Burck's motion is denied and defendants' motions are denied in part and granted in part. Burck's right to privacy claim (denominated as a right of publicity claim) is dismissed, for the New York statute pro-

tects the name, portrait, or picture of a "living person," not a character created or a role performed by a living person. Burck may proceed, however, with his false endorsement claim, for he plausibly alleges that consumers seeing defendants' advertisements would conclude—incorrectly—that he had endorsed M & M candy.

## BACKGROUND

### A. *The Facts*

As alleged in the complaint and set forth in the exhibits incorporated therein by reference, the facts are as follows:

For the past ten years, Burck "has performed as a street entertainer in New York City's Times Square under the persona known as The Naked Cowboy," wearing only "a white cowboy hat, white cowboy boots, white underpants, and an acoustic guitar." (Compl. ¶¶ 5, 6). His street performances "have become a fixture of New York City culture, as well as one of the top tourist attractions" in Times Square. (*Id.* ¶ 7).

The Naked Cowboy has become "a prominent and well-known persona," and Burck has registered trademarks to The Naked Cowboy name and likeness. (*Id.* ¶¶ 20, 21). In addition to performing in Times Square, Burck has appeared as The Naked Cowboy in various television shows, movies, and video games. (*Id.* ¶¶ 10–19). He has also licensed his name and likeness to companies for endorsements and advertisements. (*Id.* ¶ 22). For instance, he appeared in a Chevrolet commercial that debuted during Super Bowl XLI. (*Id.* ¶ 23).

Mars sells candies and chocolate products, including the world-famous M & M's. (*Id.* ¶ 33). Mars retained Chute, an adver-

tising and design agency, to create a video for two electronic billboards in Times Square and a mural for its M & M World store located in Times Square. (*Id.* ¶¶ 32, 33).

The video (an animated cartoon) featured "a blue 'M & M' dressed up exactly like The Naked Cowboy—white underwear, white cowboy hat, white cowboy boots, and white guitar." (*Id.* ¶ 26; *see* DX C).[1] In addition to the M & M Cowboy character, the video showed other M & Ms as famous New York figures, such as the Statue of Liberty and King Kong, as well as everyday New Yorkers and tourists engaging in typical New York activities such as hailing a cab and riding a carriage through Central Park. Beginning in April 2007 (Compl. ¶ 29), the video "played on a continuous loop every few minutes over a nine-month period" (Tr. at 22).

The mural inside the M & M World store was a snapshot of the heart of Times Square, transformed into an animated world populated by M & M characters. (Compl. ¶ 30; *see* DX B1). Neon lights, oversized billboards advertising Broadway shows, and familiar landmarks, such as the Cup Noodles sign, filled the scene. Many of the signs and billboards in the mural were altered to incorporate the M & M logo or candy themes, such as replacing "STOMP" (the name of a show) with the word "CHOMP" and substituting a red M & M in place of the red heart in the logo "I ♥ NY." In the middle of the mural, in the midst of a cluster of billboards, was a small billboard featuring a yellow M & M wearing The Naked Cowboy's signature costume. (DX B1).

Defendants did not request, nor did they receive, permission from Burck to use a

---

1. References to "DX" are to defendants' exhibits submitted at the oral argument on June 11, 2008. These exhibits are referred to in the complaint and are deemed incorporated therein by reference. (*See* Transcript of Proceedings of June 11, 2008 ("Tr.") at 4).

likeness of The Naked Cowboy for the M & M Cowboy characters. (Compl. ¶ 25).

## B. Procedural History

Burck commenced this action on February 11, 2008, asserting two causes of action: trademark infringement under section 1125(a) of the Lanham Act, 15 U.S.C. § 1125(a), and violation of section 51 of the N.Y. Civil Rights Law, N.Y. Civ. Rights Law § 51 (McKinney Supp.2008). Mars answered on March 17, 2008, asserting twelve affirmative defenses, including fair use, the First Amendment, and parody (the eighth, ninth, and tenth affirmative defenses, respectively).

These motions followed. I heard argument on June 11, 2008 and reserved decision.

## DISCUSSION

I start with defendants' motions, addressing first Burck's right of privacy claim under New York law and second his trademark infringement claim under the Lanham Act. I then turn to Burck's motion to strike certain affirmative defenses.

### A. Defendants' Motions

#### 1. Motion to Dismiss Standards

■ Motions pursuant to Rule 12(c) for judgment on the pleadings are governed by the same standards applicable to Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted. *Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir.2006). On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in his favor. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996); *see Erickson v. Pardus*, —— U.S. ——, 127 S.Ct. 2197, 2199, 167 L.Ed.2d 1081 (2007) (per curiam); *Bell Atl. Corp. v.*

*Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).

In its recent decision in *Bell Atlantic Corp.*, the Supreme Court announced the "retirement" of the oft-quoted "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 45–47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), adopting in its place a "plausibility" standard. *Bell Atl. Corp.*, 127 S.Ct. at 1969. As interpreted by the Second Circuit, *Bell Atlantic Corp.* did not announce a "universal standard of heightened fact pleading, but ... instead requir[es] a flexible 'plausibility standard,' which obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir.2007). The question is whether the pleading alleges " 'enough facts to state a claim for relief that is plausible on its face.' " *Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir.2007) (quoting *Bell Atl. Corp.*, 127 S.Ct. at 1974).

#### 2. The Right of Privacy Claim

#### a. The Statute

■ The right to privacy has been recognized by statute in New York for more than a century. *See Groden v. Random House, Inc.*, 61 F.3d 1045, 1048 (2d Cir. 1995). The New York legislature enacted sections 50 and 51 of the Civil Rights Law to protect against "nonconsensual commercial appropriations of the name, portrait or picture of a living person." *Finger v. Omni Publ'ns. Int'l, Ltd.*, 77 N.Y.2d 138, 141, 564 N.Y.S.2d 1014, 566 N.E.2d 141 (1990); *see also Arrington v. New York Times Co.*, 55 N.Y.2d 433, 439, 449 N.Y.S.2d 941, 434 N.E.2d 1319 (1982). There is no common law right to privacy or publicity in New York, and thus sections 50 and 51 provide the only remedy for such claims. *Groden*, 61 F.3d at 1049.

■ Section 50 of the New York Civil Rights Law makes it a misdemeanor to use "for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person." N.Y. Civ. Rights Law § 50 (McKinney 1992). Section 51 creates a cause of action for the invasion of the "right of privacy" granted by section 50. *See Zacchini v. Scripps–Howard Broad. Co.*, 433 U.S. 562, 571 n. 6, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977). Section 51 provides:

> Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided [in section 50] may maintain an equitable action ... to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use.

N.Y. Civ. Rights Law § 51 (McKinney Supp.2008). To maintain a civil action under section 51, a plaintiff must show that the defendant (1) used his name, portrait, picture, or voice, (2) for advertising or trade purposes, (3) without his written consent. *Allen v. Nat'l Video, Inc.*, 610 F.Supp. 612, 621 (S.D.N.Y.1985).

Sections 50 and 51 are limited in their reach because of the First Amendment. They do not apply, for example, to "reports of newsworthy events or matters of public interest." *Messenger v. Gruner + Jahr Printing & Publ'g*, 94 N.Y.2d 436, 441, 706 N.Y.S.2d 52, 727 N.E.2d 549 (2000). Likewise, they do not apply to works of art. *Hoepker v. Kruger*, 200 F.Supp.2d 340, 349 (S.D.N.Y.2002). For example, the use of a town justice's picture without his permission was held not to violate section 50 where it was used as part of a painting that was a caricature and parody. *Altbach v. Kulon*, 302 A.D.2d 655, 657, 754 N.Y.S.2d 709 (3d Dep't 2003). Similarly, "entertainment broadcasts" that involve, for example, humor and comedy are forms of expression that may also be protected by the First Amendment, although not categorically. *See Geary v. Goldstein*, 831 F.Supp. 269, 273 (S.D.N.Y. 1993) (quoting *Frank v. Nat'l Broad. Co.*, 119 A.D.2d 252, 257, 506 N.Y.S.2d 869 (2d Dep't 1986)).

■ Over the years there has been much litigation over what constitutes a person's "portrait" or "picture" for purposes of sections 50 and 51. It is settled that "any recognizable likeness, not just an actual photograph, may qualify as a 'portrait or picture.'" *Allen*, 610 F.Supp. at 622 (citing *Ali v. Playgirl, Inc.*, 447 F.Supp. 723, 726 (S.D.N.Y.1978)). *Ali* involved a composite photograph and drawing of a naked African–American man in a boxing ring, with facial features recognizable as those of Muhammad Ali. 447 F.Supp. at 726. The court held that this was a portrait or picture of the former world heavyweight boxing champion. *Id.* Similarly, in *Young v. Greneker Studios*, 175 Misc. 1027, 26 N.Y.S.2d 357 (N.Y.Sup. Ct.1941), the court held that a manikin that was modeled on the plaintiff was a portrait or picture of her. *Id.* at 1027–28, 26 N.Y.S.2d 357. The court explained that "[t]he words 'picture' and 'portrait' are broad enough to include any representation [of a living person], whether by photograph, painting or sculpture." *Id.* at 1028, 26 N.Y.S.2d 357.

The use in advertisements of "look-alikes"—models who look like celebrities—has generated lawsuits. The Supreme Court, New York County, held that the use in an advertisement of a model who looked like Jacqueline Kennedy Onassis violated sections 50 and 51. *Onassis v. Christian Dior–New York, Inc.*, 122

Misc.2d 603, 472 N.Y.S.2d 254 (N.Y.Sup. Ct.1984). The court held that "a representation which conveys the essence and likeness of an individual, ... which was intended to be, and did, in fact, convey the idea that it was the plaintiff" was a picture or portrait for purposes of the Civil Rights Law. *Id.* at 611, 472 N.Y.S.2d 254.

In contrast, in *Allen v. National Video, Inc.,* a case involving the use in an advertisement of a Woody Allen look-alike, Judge Motley declined to apply section 51, concluding that she would have to reach a "somewhat strained construction" of the statute to hold that it governed. 610 F.Supp. at 624. The court framed the question as whether "the mixture of fantasy and reality [in the advertisement] suggested almost unavoidably the actual presence of the real-life celebrity," that is, whether "the photograph in question ... create[d], as a matter of law, the illusion of Woody Allen's actual presence in the advertisement." *Id.* at 623–24. The court concluded that the claim was more appropriately analyzed as a Lanham Act claim. *Id.* at 624.

Judge Motley recognized in *Allen* that "[t]he privacy law does not prohibit one from evoking certain aspects of another's personality." *Id.* at 623 (citing *Lombardo v. Doyle, Dane & Bernbach, Inc.,* 58 A.D.2d 620, 396 N.Y.S.2d 661 (2d Dep't 1977)). Indeed, she held that "[m]erely suggesting certain characteristics of the plaintiff, without literally using his or her name, portrait, or picture, is not actionable under the statute." 610 F.Supp. at 621.

In *Lombardo,* the court rejected a claim under section 51 by the conductor Guy Lombardo based on a commercial showing an actor conducting a band playing "Auld Lang Syne" at a New Year's Eve party much as Lombardo had done for decades. The court held that "it is clear that the Civil Rights Law is to be strictly construed and is not to be applied so as to prohibit the portrayal of an individual's personality or style of performance." 58 A.D.2d at 622, 396 N.Y.S.2d 661.

### b. *Application*

There is no dispute as to the second and third elements of Burck's claim under section 51. Defendants concede that the video and mural were used, at least in part, for commercial purposes and that Burck did not give permission, written or otherwise, to defendants to use The Naked Cowboy likeness. (Tr. at 5–6). As to the first element, it is also undisputed that defendants did not invoke the name "Robert Burck" or the name of his character "The Naked Cowboy." Nor did they use Burck's voice. Rather, the sole issue is whether defendants used Burck's "portrait" or "picture."

I conclude that defendants did not.

■ First, defendants did not use an actual photograph or picture of Burck himself, nor did they use a recognizable likeness or representation of him. *See Allen,* 610 F.Supp. at 622. Obviously, no viewer would have thought that the M & M Cowboy characters were actually Burck or were intended to be him. *See Onassis,* 122 Misc.2d at 611, 472 N.Y.S.2d 254. The M & M Cowboy characters are not portraits or pictures of Burck, and thus defendants did not use a portrait or picture of Burck.

Second, defendants did evoke certain aspects of the character created by Burck, and they copied The Naked Cowboy's costume, but these actions were not prohibited by sections 50 and 51. Merely evoking certain aspects of another's character or role does not violate sections 50 and 51. *See Allen,* 610 F.Supp. at 623 ("The privacy law does not prohibit one from evoking certain aspects of another's personali-

ty . . . ."); *Lombardo,* 58 A.D.2d at 622, 396 N.Y.S.2d 661.

The plain language of the Civil Rights Law makes it clear that the statutory right to privacy does not extend to fictitious characters adopted or created by celebrities. Section 51 protects "any person," and section 50 limits the statutory protection to "any living person." *See Messenger v. Gruner + Jahr Printing & Publ'g,* 208 F.3d 122, 125 (2d Cir.2000). The Naked Cowboy is not a living person, but a character Burck takes on when performing. The privacy statutes were not intended to protect a trademarked, costumed character publicly performed by a person.

The case law supports the conclusion that the M & M Cowboy characters depicted in the video and mural are merely personifications that do not fall within the literal meaning of "portrait" or "picture" of a person. In *White v. Samsung Elecs. Am., Inc.,* 971 F.2d 1395 (9th Cir.1992), Vanna White, the hostess of the popular game show "Wheel of Fortune," sued defendants for, among other things, violating her right to privacy under California's privacy statute, which is substantively similar to the New York privacy statute.[2] Defendants had produced an advertisement using a robot dressed in a wig, gown, and jewelry that resembled White's hair and dress. The Ninth Circuit affirmed the lower court's dismissal of her right of privacy claim on the ground that "a robot with mechanical features [was] not, for example, a manikin molded to White's precise features." *Id.* at 1397. It thus concluded that the "caricature or impressionistic resemblance" was not a "likeness"[3] within the meaning of the statute.[4] The M & M characters dressed to look like The Naked Cowboy here are comparable to the robot made to look like Vanna White.

Burck argues that his "persona" as The Naked Cowboy qualifies as a "portrait" or "picture" within the meaning of section 51. But the statutory right of privacy was not intended to protect the "property interest of the celebrity in his or her public identity." *Allen,* 610 F.Supp. at 621. Instead, sections 50 and 51 were "primarily designed to compensate for the hurt feelings of private people who find their identities usurped for another's commercial gain." *Id.* This statutory purpose is reflected in the title of Article 5 of the New York Civil Rights law, "Right of Privacy." Although public figures do not forfeit their right of privacy, *see Onassis,* 122 Misc.2d at 614, 472 N.Y.S.2d 254, aspects of their public personas not captured in their physical features or voice are not protected under the privacy statute, *see Allen,* 610 F.Supp. at 623 (under section 51, "the commercial use complained of [must] amount to a 'portrait or picture' of an individual, not merely the suggestion of some aspect of a person's public persona").

As discussed above, the "look-alike cases" are also instructive, for they empha-

---

**2.** Section 3344(a) of the California Civil Code provides, in pertinent part, that "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, . . . for purposes of advertising or selling, . . . without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof." Cal. Civ.Code § 3344(a).

**3.** The California law is even broader than the New York statute in that it includes the word

"likeness," whereas the New York statute does not.

**4.** The Ninth Circuit did allow White to proceed with her right to publicity claim under California common law, which the court concluded was "not so confined" as the statutory right of privacy. New York, however, does not recognize an analogous common law right to publicity. *See Allen,* 610 F.Supp. at 621.

size the point that although a representation of "any recognizable likeness, not just an actual photograph, may qualify as a 'portrait or picture,'" *id.* at 622, that likeness must be a "close and purposeful resemblance to reality" of the actual person, *Onassis,* 122 Misc.2d at 611–12, 472 N.Y.S.2d at 261. In *Onassis,* the court found that the advertisement created the overall impression that plaintiff herself was in the advertisement. The court in *Allen* distinguished *Onassis* and found that Allen's look-alike was not a portrait or picture as required by section 51.[f] The court explained that the "'illusion' created in *Onassis* was that plaintiff had actually appeared in the advertisement," and thus the advertisement was, "as a matter of law, a portrait of Jacqueline Onassis." *Allen,* 610 F.Supp. at 623. In contrast, there were "several physical differences" between the Allen look-alike and Allen himself, such as defendant's larger eyebrows, wider face, and more uneven complexion, and thus the court concluded that the advertisement did not use Allen's portrait or picture. *Id.* at 624. Here, of course, there was no "illusion" that Burck was actually in defendants' advertisements.

Citing *Loftus v. Greenwich Lithographing Co.,* 192 A.D. 251, 182 N.Y.S. 428 (1st Dep't 1920), Burck contends that section 51 prohibits images even where the only recognizable likeness to the plaintiff is his or her signature costume. In *Loftus,* the plaintiff was an actress who was photographed in a "red costume representing a rose." *Id.* at 252, 182 N.Y.S. 428. This costume was never worn by any person other than the plaintiff, and she was "readily recognized from the photograph, and particularly from the costume." *Id.* To promote a film, the defendant produced a poster that featured a female figure with an identical costume. Although the main identifying feature in the infringing poster was the costume, the basis of the court's decision was that the female figure in the poster was such "an accurate likeness of the plaintiff" that it was "perfectly evident that [the infringer] had and used a copy of [plaintiff's] photograph, and that he copied the features of the plaintiff." *Id.* at 254, 256, 182 N.Y.S. 428. In other words, the poster in *Loftus* violated section 51 not because it depicted a unique costume, but because it attempted to create a "portrait or picture" of the actress herself.

Here, there was no attempt to create a portrait or picture of Burck himself. Rather, the purportedly infringing images were M & M characters wearing Burck's signature outfit. The images were not portraits or pictures of Burck as The Naked Cowboy, but of M & Ms dressed as The Naked Cowboy. Thus, they do not violate sections 50 and 51, and accordingly, Burck's right of privacy claim is dismissed.

### 3. *Lanham Act Claim*

■ Although Burck's reliance on the privacy statutes is misplaced, he may find redress elsewhere in the law. Section 43(a) of the Lanham Act creates liability for "[a]ny person who, on or in connection with any goods or services, ... uses in commerce ... false or misleading representation of fact, which is likely to cause confusion ... as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1). This provision of the Lanham Act "is an appropriate vehicle for the assertion of claims of falsely implying the endorsement of a product or service by a real person." *Albert v. Apex Fitness, Inc.,* No. 97 Civ. 1151(LAK), 1997 WL 323899, at *1 (S.D.N.Y. Jun.13, 1997) (quoting J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 28:15 (4th ed.1996)).

The elements of a false endorsement claim under the Lanham Act are that the defendant, (1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services. *Warner Bros. Entm't Inc. v. Ideal World Direct,* 516 F.Supp.2d 261, 268 (S.D.N.Y.2007); *Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis,* No. 04 Civ. 6107(DAB), 2006 WL 2289847, at *10–11 (S.D.N.Y. Aug.8, 2006).

Defendants do not dispute that Burck has alleged the first three elements of a false endorsement claim. Instead, they argue that the allegations in the complaint fail to establish the fourth prong because the video and mural are merely parodies of The Naked Cowboy and no one would confuse these parodies for an endorsement. Defendants additionally argue that even if there is a likelihood of confusion despite the creative and humorous nature of the video and mural, parodies are protected as fair use under the First Amendment.

The Supreme Court has defined parody as "the use of some elements of a prior author's composition to create a new one that, at least in part, comments on that author's works." *Campbell v. Acuff–Rose Music, Inc.,* 510 U.S. 569, 580, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994); *see also Harley Davidson, Inc. v. Grottanelli,* 164 F.3d 806, 813 (2d Cir.1999) ("Supreme Court's parody explication as to copyrights … is relevant to trademarks"). That a trademark is being parodied may be "clear enough to result in no confusion under the statutory likelihood of confusion analysis." *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC,* 221 F.Supp.2d 410, 416 (S.D.N.Y.2002). In these "clear" cases, "parody is not really a separate 'defense' as such, but merely a way of phrasing the traditional response that customers are not likely to be confused as to source, sponsorship or approval." *Id.*

But even if a parody is not so obvious to negate any likelihood of confusion, it may still be raised as an affirmative defense of fair use. The First Amendment protects parodies because they are valid forms of artistic expression and criticism. Parodies "provide social benefit, by shedding light on an earlier work, and, in the process, creating a new one," and thus "has an obvious claim to transformative value." *Campbell,* 510 U.S. at 579, 114 S.Ct. 1164. Whether the parody defense is used in the likelihood of confusion analysis or as an affirmative defense, the end result is the same if the defendant successfully asserts it: the plaintiff may not recover for the defendant's use of his trademark.

Defendants argue that the M & M Cowboy characters "conjure up just enough of Burck's trademark … for consumers to recognize the target of the parody, while at the same time making 'obvious changes to the marks that constitute the joke.' " (Def. Mem. at 14). Defendants also argue that the M & M Cowboy characters must be considered in context: the video and mural "displayed the M & M'S Cowboy Characters not in isolation, but rather as part of a series of parodies of the 'New York City experience.' " (*Id.* at 16). For instance, one M & M character is a parody of King Kong, climbing the Empire State Building; another is dressed and posed like the Statue of Liberty; and another rides in a carriage through Central Park.

Whether the M & M Cowboy characters were parodies of The Naked Cowboy, however, raises factual questions that are not for the Court to decide at this stage of the litigation. Some consumers, as defendants argue, may view the M & M

Cowboy characters as a part of a larger work depicting New York scenes and parodying famous New York characters. But other consumers may mistakenly believe that The Naked Cowboy himself endorsed the copying of his "trademarked likeness" because the M & M Cowboy characters appear in a commercial setting (*i.e.,* on the video billboard and inside the M & M World store). Moreover, even assuming that the M & M Cowboy characters were parodies, a factfinder may nevertheless conclude that the parodies were too weak to negate the potential for consumer confusion. *See Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F.Supp. 1314, 1324 (S.D.N.Y.1989) (determining whether parody is sufficiently strong to destroy consumer confusion is an issue for the jury); *Geary,* 831 F.Supp. at 275 (concluding that "it is not true that a reasonable viewer would necessarily understand that defendants were satirizing a commercial of independent origin or that [plaintiff] had no association with [the adaptation of the commercial]").

On a motion to dismiss, the Court must accept the factual allegations in the complaint and may consider only whether the pleading plausibly states a claim for relief. *Iqbal,* 490 F.3d at 157–58. Here, the complaint alleges that the M & M Cowboy characters, dressed just like The Naked Cowboy, "implied, falsely, that Burck's character, The Naked Cowboy, endorse[d] the M & M product." (Compl.¶ 41). The complaint plausibly argues that consumers would believe that the M & M Cowboy characters were promoting a product rather than merely parodying The Naked Cowboy, and that viewers would believe that The Naked Cowboy had endorsed M & Ms. Hence, the complaint has alleged suffi-

cient facts to support a false endorsement claim. Accordingly, defendants' motion to dismiss the trademark infringement claim is denied.

### C. *Plaintiff's Motion*

#### 1. *Pleading Standard*

■ Rule 12(f) of the Federal Rules of Civil Procedure provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R.Civ.P. 12(f); *see Emmpresa Cubana Del Tabaco v. Culbro Corp.,* 213 F.R.D. 151, 155 (S.D.N.Y.2003). But courts "should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1976). Motions to strike affirmative defenses are thus "generally disfavored," *Emmpresa Cubana Del Tabaco,* 213 F.R.D. at 155 (internal quotation marks and citations omitted), and should be denied "unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation," *Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.,* No. 06 Civ. 4624(PKL), 2008 WL 1910503, at *4 (S.D.N.Y. Apr.30, 2008).

■ Moreover, the standards for a Rule 12(b)(6) motion to dismiss also apply to a motion to strike an affirmative defense pursuant to Rule 12(f). *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.,* 531 F.Supp.2d 620, 622 (S.D.N.Y.2008).

#### 2. *The Parody and Related Defenses*

Burck moves to strike the parody, fair use, and First Amendment defenses on two grounds.[5] First, he contends that the video and mural were not parodies at all,

---

5. The parody, fair use, and First Amendment defenses are substantively the same. Parody is a form of fair use, and both are protected

under the First Amendment. *Campbell,* 510 U.S. at 579–80, 114 S.Ct. 1164. (*See* Tr. at 6).

and thus not entitled to protection as fair use under the First Amendment. But as discussed above, whether the M & M Cowboy characters were parodying The Naked Cowboy is a factual issue that cannot be decided on a motion to dismiss or a motion to strike. This argument is accordingly rejected.

Second, Burck contends that even if the M & M Cowboy characters were parodies of The Naked Cowboy, the parody defense must be stricken from the pleadings because the defense does not apply to a parody that advertises a product, as opposed to a parody that is the actual product. He argues that because "a valid parody must communicate an expressive idea" (Pl. Mem. at 7), the First Amendment does not protect "a parody which bears no relation to the product it advertises [because it] cannot conceivably contain a substantive message or expressive idea" (*id.* at 9).

Courts have recognized, however, that a parody may have "hybrid" uses, *i.e.,* a parody can be a product and, at the same time, advertise that product. A title of a film is a classic example. In *Rogers v. Grimaldi,* 875 F.2d 994 (2d Cir.1989), acclaimed actress Ginger Rogers sued for trademark violation on the ground that a film about two fictional Italian cabaret performers, titled "Ginger and Fred," confused potential viewers as to her connection with the film. The defendants argued that the title was entitled to First Amendment protection as an artistic expression. The Second Circuit recognized that

> Titles, like the artistic works they identify, are of a hybrid nature, combining artistic expression and commercial promotion. The title of a movie may be both an integral element of the filmmaker's expression as well as a significant means of marketing the film to the public. The artistic and commercial ele-

ments of titles are inextricably intertwined.

*Id.* at 998. To balance the rights of the trademark owner against the interests of free speech, the Second Circuit adopted a balancing test for trademark cases implicating artistic expression: trademark protection is afforded "only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." *Id.* at 999. Applying the test to the case, the Second Circuit dismissed Ginger Rogers's trademark claim in light of the title's "artistic relevance to the underlying work." *Id.*

Here, defendants likewise argue that the video and mural featuring the M & M Cowboy characters were commercial in part and artistic in part. (Tr. at 5–6). Indeed, the commercial aspect of the video and mural is subtle—they do not advertise or describe the product itself—while the entertainment aspect is obvious. The animated M & M candies depict various scenes in New York that, defendants argue, "convey a humorous message" to encourage "consumers [to] see the humor in familiar New York characters and experiences." (Def. Opp. at 19). The mural, in particular, is more artistic than commercial, as it is primarily a humorous painting of Times Square, with key landmarks and fixtures—including The Naked Cowboy—transformed into M & M characters or altered to incorporate the M & M logo or the theme of candy. Because a parody may be "of a hybrid nature, combining artistic expression and commercial promotion," it is valid to plead a parody defense even where the parody is used in part for advertising purposes. *See, e.g., N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC,* 293 F.3d 550, 555–56 (2d Cir.2002) (use of parody to promote casino held noninfringing). Accordingly, Burck's motion to strike the parody defense is denied.

458

## CONCLUSION

For the reasons set forth above, Burck's motion is denied and defendants' motions are denied in part and granted in part. Chute's motion to dismiss and Mars's motion for judgment on the pleading are granted with respect to the right to privacy claim, but denied with respect to the trademark infringement claim. Counsel shall appear for a pretrial conference on July 11, 2008 at noon.

SO ORDERED.